**Robert W. FOWLER, Plaintiff–Appellant,**

v.

**Armond CROSS, Commissioner of Florida Parole Board, Defendants–Appellees.**

Nos. 76–2852, 78–2348.

United States Court of Appeals,
Fifth Circuit.

Jan. 27, 1981.

Jepeway & Jepeway, Louis Jepeway, Jr., Miami, Fla. (Court–appointed, not under Act), for plaintiff–appellant.

Joe Belitzky, Dept. of Legal Affairs, Tallahassee, Fla., Jim Smith, Atty. Gen., Richard M. Dunn, Miami, Fla., for Sandstrom & Clark.

Michael H. Davidson, Gen. Counsel, Fla. Parole & Probation Comm., Tallahassee, Fla., for Barker, Russell, Keller, Kenagen & Howard.

Before MORGAN, ANDERSON and RANDALL, Circuit Judges.

R. LANIER ANDERSON, III, Circuit Judge:

The appellant filed this suit under 42 U.S.C.A. § 1983 seeking damages from the appellees for depriving him of his constitutional right to a prompt on–site preliminary parole revocation hearing following his arrest for alleged parole violations. By mistake the appellant was transferred from the Dade County Jail into the state prison system and, as a consequence, he did not receive his preliminary hearing until fifty days after the date originally scheduled for the hearing. The district court entered summary judgment in favor of defendants Sandstrom and Clark. Following a bench

trial, the district court entered judgment for the remaining defendants. We affirm the district court's grant of summary judgment, but reverse the judgment in favor of certain of the defendants.

## I. FACTS

The appellant was convicted in Florida State Court of a felony on September 30, 1965, and was paroled on or about July 13, 1972, to a New Jersey detainer. On March 4, 1973, he was released from prison in New Jersey and returned to the supervision of the Florida Parole and Probation Commission. On April 4, 1974, while the defendant was still under parole supervision of Florida authorities, he was arrested in Dade County, Florida, for the alleged commission of a felonious offense. Following a preliminary hearing[1] on April 9, 1974, all the charges against the appellant, including loitering and prowling and possession of drugs, were dismissed for lack of probable cause; however, the appellant remained incarcerated under the authority of Fla.Stat.Ann. §§ 949.10 and 949.11 until April 14, 1974, when he was released.[2] On April 19, 1974, the appellant was arrested on a parole violator's warrant issued by the Florida Parole and Probation Commission and was again incarcerated at the Dade County Jail. On April 22, 1974, appellant was visited by appellee Benjamin Kenagen, a supervisor for the Florida State Parole and Probation Commission. Kenagen was responsible for conducting parole preliminary hearings for alleged parole violators in Dade County. Kenagen informed the appellant of his right to a preliminary hearing on the alleged violation and the appellant requested a hearing. A hearing was set for April 29, 1974, and Kenagen testified that he orally informed George Babula, a records officer at the Dade County Jail, that a hearing had been set and requested that the appellant not be transferred until after the hearing. At approximately 3:00 A.M. on the morning of April 29, the appellant was removed from the Dade County Jail and transported to state prison facilities at Lake Butler, Florida, and then to the Union Correctional Institute at Raiford, Florida, over 300 miles from Dade County.

When Kenagen arrived at the jail for the hearing, he discovered that the appellant had been removed, but took no other action other than to write a memorandum notifying the commission that appellant had been transferred without a hearing. Kenagen testified that it was the custom or practice of his office to give only oral notice of parole preliminary hearings to the jail officials. It was the jail's policy to transfer parole violators into the state prison system within two to seven days from their arrest. Director Sandstrom, the director of the Dade County Jail, testified that he was unaware or unfamiliar with the required

1. Under Fla.Rule of Crim.P. 3.131, a defendant who is arrested without a warrant and held in custody must be afforded a nonadversary probable cause hearing within 72 hours from the time of his arrest. The magistrate who conducts the hearing must determine whether probable cause exists to detain further the defendant. The defendant need not be present at the hearing and is not entitled to be represented by counsel. *See Gerstein v. Pugh*, 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975). If probable cause is not found, the defendant must be released unless an information or indictment has been filed.

2. Section 949.10 provides:
 The subsequent arrest on a felony charge, in this state, of any person who has been placed on parole or probation following a finding of guilt or of any felony, or a plea of guilty or nolo contendere to any felony, shall be prima facie evidence of the violation of the terms and conditions of such parole or probation. Upon such arrest, the parole agreement or probation order shall immediately be temporarily revoked, and such person shall remain in custody until a hearing by the parole and probation commission or the court.
 Section 949.11 provides:
 Any person whose parole or probation agreement is revoked pursuant to section 949.10 shall be given a hearing pursuant to section 947.23 or section 948.06. The hearing shall be held within ten days from the date of such arrest, the provisions of section 947.23 or section 948.06 notwithstanding. Failure of the commission or the court to hold the hearing within ten days from the day of arrest shall cause the immediate release of such person from incarceration on the temporary revocation.

parole preliminary hearing but that he tried to accommodate the Parole Commission however he could.

In late April or early May, Harry T. Dodd, administrative assistant for the Parole Commission, received Kenagen's memorandum about appellant's premature transfer from the Dade County Jail. He arranged for a final revocation hearing to be held at Raiford, Florida, on May 27, 1974, almost one month after the date scheduled for the preliminary hearing. Appellant refused to have a final parole revocation hearing at Raiford but instead insisted on a preliminary hearing to be held in Dade County, Florida. Defendant Commissioner Howard also suggested that the proper course would be to return appellant to Dade County for a preliminary hearing, and on May 30, 1974, Mr. Dodd sent a letter to the defendant Louis Wainwright requesting that appellant be returned to Dade County. Appellant was returned to Dade County and was finally given his preliminary hearing on June 19, 1974. The hearing officer found probable cause to remand appellant to the state prison pending a final hearing but recommended that he be restored to parole. Appellant was finally released on June 28, 1974. Therefore, he remained in custody for approximately 50 days beyond the date set for the hearing without having been accorded a preliminary parole revocation hearing.

Following his release, appellant filed a suit against Jack Sandstrom, Director of the Department of Corrections and Rehabilitation of Metropolitan Dade County, Florida, and LeRoy Clark, an employee of the Department of Corrections. For convenience sake, Sandstrom and Clark are referred to as "county defendants." Also named as defendants were members of the Florida Parole and Probation Commission, Armond Cross, J. Hopps Barker, Roy W. Russell, Ray Howard, and Cale R. Keller and Benjamin Kenagen, an employee of the Commission.[3] The Commissioners and Kenagen are referred to as "state defendants." The complaint sought compensatory and punitive damages for the deprivation of appellant's right to a prompt on–site preliminary parole revocation hearing as required by *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972) and *Gagnon v. Scarpelli*, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973). The case was tried by the district court without a jury.

At the close of the first day of the trial, the district court granted Sandstrom and Clark's previously filed motion for summary judgment. The court held that the state imposed no duty upon the jailer to afford a preliminary revocation hearing. That duty rests upon the Parole and Probation Commission. It also held that appellant had failed to adduce evidence to contradict the affidavit and sworn testimony that the county defendants acted in good faith and with reasonable belief in the validity of their actions. Following the hearing, the district court entered findings of fact and conclusions of law applicable to the claims against the state defendants. It found that "[t]he procedures adopted by the Commission with regard to providing preliminary parole revocation hearings were, as of April, 1974, insufficient to assure that a parolee would not be transferred to and incarcerated in a state prison until he had been afforded a preliminary hearing." (R.93.) With respect to defendant Kenagen, the court found: "Defendant Kenagen failed to take adequate measures to assure that the plaintiff would not be transferred to and incarcerated in a state prison until he had received a preliminary hearing." (R.93.) The court concluded that the incarceration from April 29 until June, 1974, without having been afforded a preliminary hearing violated appellant's constitutional

---

**3.** Also named as defendants were O. J. Keller, Secretary of the Florida Department of Health and Rehabilitative Services and Louis Wainwright, Director of the same department. The district court granted their motions for summary judgment and since appellant has failed to address these defendants on appeal, we deem

right to due process of the law.[4] (R.94.) The district court, nevertheless, concluded that the state defendants were entitled to a qualified immunity from liability for damages. (R.94.)

## II. DISCUSSION

### A. The county defendants

■ The district court granted summary judgment for the county defendants Sandstrom and Clark on two grounds: (1) that the duty and obligation to afford parolee a preliminary hearing rests upon the Parole Commissioners and not local jailers; and (2) that they were protected from liability by the good faith immunity. We affirm the summary judgment on the basis of the first ground and express no opinion as to the good faith immunity. Florida law clearly places upon the Parole Commission the duty to afford the required preliminary parole revocation hearing as well as the final hearing. *See,* Fla.Stat.Ann. §§ 949.10, 949.11 and 947.23. This allocation of authority is evidenced by the facts in this case. Kenagen, an employee of the Parole Commission, had contacted appellant, arranged a preliminary hearing and allegedly took steps to hold appellant pending the hearing. The county defendants were merely holding appellant pursuant to a facially valid warrant issued by the Parole Commission. In *Baker v. McCollan*, 443 U.S. 137, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979), a § 1983 suit against a sheriff who arrested and detained a man on the basis of mistaken identity, the Supreme Court stated:

> A reasonable division of functions between law enforcement officers, committing magistrates, and judicial officers–all of whom may be potential defendants in a § 1983 action–is entirely consistent with 'due process of law.' Given the requirements that arrest be made only on probable cause and that one detained be accorded a speedy trial, we do not think a

sheriff executing an arrest warrant is required by the Constitution to investigate independently every claim of innocence, whether the claim is based on mistaken identity or a defense such as lack of requisite intent. Nor is the official charged with maintaining custody of the accused named in the warrant required by the Constitution to perform an error–free investigation of such a claim. The ultimate determination of such claims of innocence is placed in the hands of the judge and the jury.

443 U.S. at 145–46, 99 S.Ct. at 2695 (footnote omitted). Likewise, the functions of the county defendants and the parole commissioners represent a reasonable division of functions. The county defendants had no obligation to afford appellant a hearing; the only duty was to cooperate with the Parole Commission or its agents. Under the authority of *Baker v. McCollan*, the fact that the Parole Commission was remiss in its duties cannot serve as the basis for the county defendants' liability.

We also note that after April 29 appellant was beyond the county defendants' reach into the state system where the Parole Commission had jurisdiction. It took the state defendants 50 days to retrieve appellant and return him to Dade County. We do not see how this delay could be attributed to the county defendants. Accordingly, the summary judgment for Sandstrom and Clark is affirmed.

### B. The state defendants

■ The district court found that the state defendants had deprived appellant of a constitutional right. The state defendants abandoned their appeal from this finding and it is final. Appellant's constitutional right–the right to a prompt preliminary hearing shortly after being arrested or detained for an alleged parole violation–was established in *Morrissey v. Brewer*, 408 U.S.

---

any claims against these individuals to be abandoned.

**4.** Initially, the state defendants took a cross–appeal from the portion of the district court's finding that the procedures were inadequate

and that appellant had been deprived of a constitutional right; however, they have subsequently voluntarily dismissed their appeal. These findings and conclusions are, therefore, final.

471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972),[5] announced on June 29, 1972, almost two years before the events giving rise to this claim. Furthermore, the Florida Supreme Court has construed Florida's statutory scheme for parole and probation revocation to bring it in accord with *Morrissey's* due process requirements.[6] It is fairly implicit in the district court's opinion that the state defendants "caused" the deprivation of the constitutional right to a prompt hearing. Thus we agree with the district court's conclusion that the state defendants deprived appellant of this constitutional right. The only remaining issue on appeal is whether the district court's finding that the state defendants were entitled to a qualified immunity of good faith is "clearly erroneous." Fed.R.Civ.P. 52(a).

 We have held that the members of the Florida Parole Commission as well as their employees are entitled to raise the defense of qualified immunity for actions taken in their official capacity. *Williams v. Rhoden*, 629 F.2d 1099 (5th Cir. 1980); *Henzel v. Gerstein*, 608 F.2d 654 (5th Cir. 1979).[7] Unquestionably the acts and omissions alleged in this case fell within the state defendants' official capacities and they are entitled to raise the defense of good faith, qualified immunity. The defense of good faith, qualified immunity exists to protect public officers from liability for the exercise of discretion in performing a public duty. It reflects a decision that the public is better served by public officials who will not be deterred by fear of liability from executing the office with an independent and decisive judgment. *See Scheuer v. Rhodes*, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Douthit v. Jones*, 619 F.2d 527 (5th Cir. 1980). As stated in *Wood*

---

**5.** Specifically, the Court held that

[D]ue process would seem to require that some minimal inquiry be conducted at or reasonably near the place of the alleged parole violation or arrest and as promptly as convenient after arrest while information is fresh and sources are available. Cf. *Hyser v. Reed*, 115 U.S.App.D.C. 254, 318 F.2d 225 (1963). Such an inquiry should be seen as in the nature of a 'preliminary hearing' to determine whether there is probable cause or a reasonable ground to believe that the arrested parolee has committed acts that would constitute a violation of parole conditions. Cf. *Goldberg v. Kelly*, 397 U.S. 254 at 267-271, 90 S.Ct. 1011 at 1020-22, 25 L.Ed.2d 287 at 298-300.

*Morrissey v. Brewer*, 408 U.S. at 485, 92 S.Ct. at 2602.

**6.** Appellant devotes much effort to a constitutional attack on the facial validity of Fla.Stat. Ann. § 949.10. He argues that § 949.10 substitutes a presumption, i. e., a felony arrest is prima facie evidence of a parole violation, for the required *Morrissey* preliminary hearing. We reject appellant's challenge.

The Supreme Court of Florida has expressly adopted the federal standards as set out in *Morrissey v. Brewer, supra,* and engrafted them upon the Florida statutory scheme. *See Albritton v. Wainwright*, 313 So.2d 763 (Fla. 1975); *Dees v. State*, 295 So.2d 296 (Fla.1974); *Genung v. Nuckolls*, 292 So.2d 587 (Fla.1974); *Bernhardt v. State*, 288 So.2d 490 (Fla.1974); *Oaks v. Wainwright*, 305 So.2d 1 (Fla.1973). In *Albritton v. Wainwright, supra,* the Florida Supreme Court said:

In *Oaks v. Wainwright*, we adopted the federal standards announced in *Morrissey, supra,* requiring a preliminary hearing in addition to the final hearing for reincarceration provided by Sections 947.23, 948.06, 949.10 and 949.-11, Florida Statutes. We feel these existing Florida Statutes are sufficient to meet federal and Florida constitutional standards provided they are applied as stated in *Morrissey, Gagnon,* and *Oaks, supra.*

313 So.2d 765 (footnotes omitted). In ruling upon the constitutionality of a statute we must consider the authoritative interpretations of the state court.

Moreover, soon after *Morrissey* and long before appellant's arrest, the Commission adopted procedures to provide hearings in accordance with *Morrissey*. In fact, the appellant himself was scheduled for a preliminary hearing pursuant to those procedures. We note also that the Florida legislature amended Fla. Stat.Ann. § 947.23 in 1979 to conform the statute itself to the decisions of the Florida Supreme Court and the *Morrissey* standards. 1979 Fla.Laws c. 79-42, § 11; Fla.Stat.Ann. § 947.23 (Supp.1980). Under these circumstances, we find no constitutional infirmity in the Florida procedures and we reject appellant's challenge to the facial constitutionality of the Florida statute.

**7.** The United States Supreme Court, however, has reserved the question of what immunity, if any, a state parole officer has in a § 1983 suit. *Martinez v. California*, 444 U.S. 277, 285 n.11, 100 S.Ct. 553, 559 n.11, 62 L.Ed.2d 481, 489 n.11 (1980).

*v. Strickland,* 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975): "Action taken in the good faith fulfillment of their responsibilities and within the bounds of reason under all the circumstances will not be punished and that they need not exercise their discretion with undue timidity." 420 U.S. at 321, 95 S.Ct. at 1000.

■ It is well settled that there are two components to the qualified immunity defense, one subjective and one objective. *See Wood v. Strickland, supra; Bogard v. Cook,* 586 F.2d 399 (5th Cir. 1978), *cert. denied* 444 U.S. 883, 100 S.Ct. 173, 62 L.Ed.2d 113 (1979). Under the subjective prong, an official cannot escape liability from damages if he acts "with the malicious intent to cause a deprivation of constitutional rights or other injury" to the plaintiff. *Wood v. Strickland,* 420 U.S. at 322, 95 S.Ct. at 1000; *Procunier v. Navarette,* 434 U.S. 555, 566, 98 S.Ct. 855, 862, 55 L.Ed.2d 24 (1978). We have read "the malicious intent prong of the official immunity defense to require proof that an official either actually intended to do harm to the plaintiff, or took an action which, although not intended to do harm, was so likely to produce injury that the harm can be characterized as substantially certain to result.... [T]he test requires that a plaintiff show that the official's action [or inaction], although labeled as 'reckless' or 'grossly negligent,' falls on the actual intent

side of these terms, rather than on the side of simple negligence." *Bogard v. Cook,* 586 F.2d at 412. The district court found that the failure on the part of the state defendants to adopt procedures to safeguard the appellant's rights were not motivated by malice or ill will. Upon review of the record, this finding is not clearly erroneous and is therefore affirmed.[8]

Turning next to the objective prong of the qualified immunity defense, the Supreme Court has said that a public officer "is not immune from liability for damages under § 1983 if he knew or reasonably should have known that the action he took within the sphere of official responsibility would violate the constitutional rights of" the person affected. *Wood v. Strickland,* 420 U.S. at 322, 95 S.Ct. at 1000. In *Procunier v. Navarette,* 434 U.S. at 562, 98 S.Ct. at 859, the Supreme Court said:[9]

[T]he [qualified] immunity defense would be unavailing to petitioners if the constitutional right allegedly infringed by them was clearly established at the time of their challenged conduct, if they knew or should have known of that right, and if they knew or should have known that their conduct violated the constitutional norm.

*See also Bogard v. Cook, supra; Douthit v. Jones, supra.*

---

**8.** Likewise, we also affirm that portion of the district court's findings of fact and conclusions of law that no punitive damages are recoverable.

**9.** In the instant case we need not, and do not, express an opinion with respect to whether § 1983 affords a remedy for the *negligent* deprivation of constitutional rights. The Supreme Court has twice granted certiorari to address that precise issue, but in both cases has disposed of the case on other grounds and therefore has reserved decision on the issue. *Procunier v. Navarette,* 434 U.S. at 566, n.14, 98 S.Ct. at 862 n.14; *Baker v. McCollan,* 443 U.S. at 140, 99 S.Ct. at 2692. In the instant case, the district court found that the procedures adopted by the state defendants were insufficient to assure that a parolee would not be transferred away from the site of the arrest and that, as a result, appellant's constitutional rights under *Morrissey v. Brewer* were violated. The cross-

appeal from this finding has been abandoned, and therefore we accept the constitutional violation as the law of the case. The issue before us on this appeal, with respect to the state defendants is their affirmative defense, *i. e.,* the good faith immunity defense.

*Procunier v. Navarette, supra,* while reserving decision as to whether § 1983 affords a remedy for the negligent deprivation of constitutional rights, nevertheless described the standards governing the immunity defense in the language–"should have known that their conduct violated the constitutional norm"–quoted in the text. We conclude, therefore, that the good faith immunity defense is to be tested in part by this standard, which is similar in some respects to the standard for negligence, without regard to whether or not negligent conduct is sufficient to constitute a constitutional deprivation in a given situation.

Appellant's theory of recovery was that appellees had failed to adopt reasonable procedures to assure that appellant would not be transferred from Dade County before his preliminary hearing. Indeed, the district court found that they had in fact failed to adopt sufficient procedures to prevent transfer before the required hearing, and the cross–appeal from this finding has been abandoned. We have had an occasion to consider the application of the qualified immunity defense and the particular context of allegations that the defendant failed to adopt procedures to protect plaintiff's constitutional rights. In *Bryan v. Jones*, 530 F.2d 1210 (5th Cir.) (en banc), *cert. denied* 429 U.S. 865, 97 S.Ct. 174, 50 L.Ed.2d 145 (1976), a § 1983 suit for false imprisonment in which the sheriff's good faith immunity defense was at issue, we held

> In a case such as this one, where there is no discretion and relatively little time pressure, the jailer will be held to a high level of reasonableness as to his own actions. If he negligently established a record keeping system in which errors of this kind are likely, he will be held liable. But if the errors take place outside of his realm of responsibility, he cannot be found liable because he has acted reasonably and in good faith.

*Id.* at 1215. Judge Brown, concurring specially, amplified the majority's holding:

> I emphasize that this is *reasonable* good faith. Inescapably what is good faith is a question of fact for each case. But there are strong indicators to help the decision–makers. The court must consider the kind of responsibility of the official, *Scheuer v. Rhodes, supra*, 416 U.S. at 246, 94 S.Ct. at 1691, 40 L.Ed.2d at 102. One of the critical elements is that the official demonstrate that he has employed efficient management principles so as to minimize the chance of error and maximize the likelihood of full satisfaction of constitutional and statutory obligation.

530 F.2d at 1216–17. (Brown, C. J., concurring specially).

Upon applying the foregoing principles to the facts of this case, we hold that the district court was clearly erroneous in finding a good faith qualified immunity. There can be no question but that appellant's constitutional right to a prompt on–site preliminary hearing was "clearly established" at the time of his arrest. *Procunier v. Navarette, supra.* It is equally clear that the state defendants, Kenagen and the parole commissioners, knew about that right. *Id.* As to the third requirement for overcoming the qualified immunity defense–whether the defendants "knew or should have known that their conduct violated the constitutional norm"–we discuss Kenagen and the parole commissioners separately.

1. Kenagen

■ Kenagen was responsible for setting up preliminary parole hearings at the Dade County Jail. It was the policy at that jail to ship out parole violators within two to seven days from arrest unless the jail received other instructions. Kenagen was apparently aware of this policy and was certainly aware of the need to tell jail officials not to transfer parole violators before the preliminary hearing was held. He must have known, therefore, that if the jail officials did not receive instructions to hold a parolee, then the parolee would be transferred to the state prison system. Nevertheless, Kenagen gave only oral instructions to George Babula, one of four records officers, to hold a prisoner. The district court found that this procedure was inadequate to assure that appellant would not be transferred before his hearing. Appellees have abandoned their appeal from this finding and it is accepted as the law of the case. Since Kenagen failed to take adequate measures to avoid the possibility of premature transfer, a possibility of which he was aware, we must conclude–and we hold that the district court's implicit conclusion to the contrary is clearly erroneous–that he knew or should have known that his conduct violated the constitutional norm. Kenagen's claim of good faith qualified immunity is also discredited by the fact that when he discovered that appellant had been transferred he took no action to retrieve him other than sending a memorandum to his

superiors. Fifty days elapsed before appellant was returned to Dade County for his preliminary hearing. Accordingly, the district court's finding that Kenagen's conduct was clothed with qualified immunity is clearly erroneous and is accordingly reversed.

## 2. Parole Commissioners

■ The parole commissioners stand in a slightly different position from Kenagen. There is no evidence that they were actually aware of the jail's policy to transfer parole violators unless otherwise instructed; however, under *Procunier v. Navarette, supra,* qualified immunity may be defeated by what the official should have known as well as by what he actually knew. As the body charged with the duty of supervising parolees in general and with administering the parole preliminary hearing in particular, they should have been aware of the transfer policy and the attendant problems of premature transfer. As with Kenagen, the district court found that the Commission had not adopted procedures sufficient to assure that a parolee would not be transferred without a hearing. This finding is unchallenged on appeal. Therefore, we must conclude that, as with Kenagen, the parole commissioners knew or should have known that their conduct violated the constitutional norm. The district court's finding of qualified immunity is clearly erroneous and is reversed.

## III. CLASS CERTIFICATION

Finally, at one point the district court certified a plaintiff class of all parolees or probationers who are or will be arrested for parole or probation violations and who are not or will not be afforded a preliminary and final revocation hearing in compliance with the United States Constitution. Specifically, the class consisted of parolees who might be incarcerated and detained under the authority of Fla.Stat.Ann. § 949.10, which appellant alleged was facially unconstitutional. One month later the court vacated the class certification order on the ground that the appellant was not an adequate class representative because he was not being detained under § 949.10 at the time the suit was filed or thereafter. Appellant complains that the second order was error and urges reversal and recertification of the class for the reasons stated in the order certifying the class. The order certifying the class was based on a finding that the class was appropriate because Fla. Stat.Ann. § 929.10, the constitutionality of which was challenged, applied to all members of the class and therefore the claim of unconstitutionality was typical. Since we have rejected appellant's challenge to the constitutionality of the statute (*see* note 6, *supra*), no purpose would be served even if we should decide that the district court erred in vacating the class certification order. Moreover, appellant argues this issue on appeal only by a cursory reference to the district court's certification order. Accordingly, we do not consider the merits of the district court's later order vacating the class certification and see no reason to disturb that order.

## IV. SUMMARY

We affirm the summary judgment in favor of Sandstrom and Clark, O. J. Keller and Wainwright. We reverse the finding that Kenagen and the Commissioners are entitled to a good faith qualified immunity from liability for violating appellant's constitutional rights and remand for a trial on the issue of damages. We affirm the district court's finding that appellant is not entitled to punitive damages and leave undisturbed the order vacating class certification.

AFFIRMED IN PART, REVERSED IN PART AND REMANDED.