**Howard Welcome WALLER, Plaintiff,**

v.

**Roy DRAGO, James Carey, Richard Byram, Marie Gard, Dawn Stewart, Morrow County, by and through its Board of Commissioners, and Umatilla County, by and through its Board of Commissioners, Defendants.**

**No. P84–6075–PA.**

United States District Court,
D. Oregon.

March 19, 1985.

Order on Eighth Amendment Rights
June 11, 1985.

Spencer M. Neal, Ginsburg, Gomez & Neal, Hillsboro, Or., for plaintiff.

James P. Martin, Joyce A. Hyne, Schwabe, Williamson, Wyatt, Moore & Roberts, Portland, Or., for defendants James Carey, Richard Byram, Marie Gard, Dawn Stewart, Umatilla County.

## OPINION

PANNER, Chief Judge.

Defendants Umatilla County, the Umatilla County Board of Commissioners, and Umatilla County employees James. Carey, Richard Byram, Marie Gard, and Dawn Stewart (Umatilla County defendants) move for summary judgment. I grant the motion with respect to plaintiff's unreasonable seizure and due process claims.

## BACKGROUND

Plaintiff Howard Welcome Waller brings this action pursuant to 42 U.S.C. § 1983 and the common law of Oregon. He seeks declaratory and monetary relief. Defendants are Morrow County, the Morrow County Board of Commissioners, Morrow County Sheriff Roy Drago (Morrow County defendants), and the Umatilla County defendants.

The pleadings and affidavits show that there is no dispute regarding the following events. On May 11, 1983, plaintiff was arrested in Morrow County, Oregon and charged with driving while suspended (DWS). Morrow County officials held him for three days. On May 13, 1983, he appeared in Morrow County Circuit Court, pled guilty to the DWS charge, and was sentenced to time served. (Complaint, at 6; Second Amended Complaint, ¶ 4.1.)

While holding Waller, the Morrow County Sheriff's Office received information that the Oregon Board of Parole had issued a warrant for Waller's arrest. (Morrow County Defendants' Motion for Summary Judgment, Ex. "K" at 1–2.) This was confirmed by phone. (*Id.*) Acting on this information, Morrow County officials arranged for Waller's transfer to the Umatilla County Jail, which had space available. After he pled guilty to the DWS charge, Waller was transferred to the Umatilla County Jail.

Waller complained to Umatilla County Jail employees that his incarceration was illegal. He obtained counsel and filed a writ of habeas corpus in state court. He was released July 1, 1983, after the writ was granted by Pro Tem Morrow County Circuit Court Judge Ralph Currin, who found that Waller was "not being held ... pursuant to any valid warrant, detainer, or other court order...." (Second Amended Complaint, "Exhibit.")

Waller alleges that his fifty-one day incarceration at the Umatilla County Jail was in violation of his right to be free of unreasonable seizures of his person, his right not to be deprived of liberty without due process, and his right to be free of cruel and unusual punishment. Under Oregon law, he alleges false imprisonment and negligence. He also alleges that his first amendment rights were violated when defendants tampered with his official mail. (Second Amended Complaint, ¶ 5.)

The Umatilla County defendants and the Morrow County defendants moved for summary judgment. Waller agreed to dismiss the claim against the Morrow County defendants. During a pretrial conference, he also agreed to dismiss the mail tampering claim against Umatilla County. At the same conference, I denied the Umatilla County defendants' motion for summary judgment insofar as it applied to Waller's other claims. By letter, the Umatilla County defendants requested that I reconsider this ruling, but I denied the request. I then instructed the parties to brief the effect of *Moody v. Daggett*, 429 U.S. 78, 97

S.Ct. 274, 50 L.Ed.2d 236 (1976), and its progeny. I now grant the Umatilla County defendants' motion for summary judgment with respect to the unreasonable seizure and due process claims.

## STANDARDS

Federal Rule of Civil Procedure 56(c) allows the court to grant summary judgment if it finds that: (1) there is no genuine issue as to any material fact, and (2) the moving party is entitled to judgment as a matter of law. The moving party has the burden of establishing the absence of a genuine issue of material fact. *Securities and Exchange Commission v. Murphy*, 626 F.2d 633, 640 (9th Cir.1980). All reasonable doubts as to the existence of a genuine issue of material fact should be resolved against the moving party. *Hector v. Weins*, 553 F.2d 429, 432 (9th Cir.1976). In addition, the inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *United States v. Diebold*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962). Where different ultimate inferences can be drawn, summary judgment is inappropriate. *Sankovich v. The Life Insurance Company of North America*, 638 F.2d 136 (9th Cir.1981).

If the moving party satisfies the initial burden, then the burden shifts to the opponent to come forward with specific facts showing that a genuine issue of material fact remains in the case. Fed.R.Civ.P. 56(e); *Neely v. St. Paul Fire & Marine Insurance Co.*, 584 F.2d 341, 344 (9th Cir. 1978). An adverse party may not rest upon the mere allegations in his pleadings; he must present the issues of fact in evidentiary form. Fed.R.Civ.P. 56(e). If the adverse party does not respond, summary judgment, if appropriate, shall be entered against him. *Id.*

## DISCUSSION

In evaluating plaintiff's unreasonable seizure and due process claims, I am not bound by Judge Currin's finding that the plaintiff was "not being held ... pursuant to any valid warrant, detainer, or other court order...." (Second Amended Complaint, "Exhibit.") This finding is not supported by the summary judgment material presented to me. The Umatilla County defendants are also not collaterally estopped from raising this issue here.

▆▆▆ Under the doctrine of collateral estoppel, once an issue is actually litigated and necessarily determined, that determination is conclusive in subsequent suits based on a different cause of action but involving a party or privy to the prior action. *United States v. ITT Rayonier, Inc.*, 627 F.2d 996, 1000 (9th Cir.1980). "Party" need not be defined in a rigid manner. *United States v. Geophysical Corp.*, 732 F.2d 693, 697 (9th Cir.1984). A person not technically a party to the prior action may be bound if his interests are so similar to those of a party to the prior action that the party was his "virtual representative" in the prior action. *Id.*

Although the Supreme Court permitted the offensive use of collateral estoppel in *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979), it allowed the courts "broad discretion to determine when it should be applied." *Id.* at 331, 99 S.Ct. at 651.

Judge Currin's order indicates that Richard McNerny, the Morrow County's District Attorney, was named as the only defendant in Waller's habeas petition. The order also indicates that McNerny and a Morrow County Sheriff's Deputy were present.

▆▆▆ Morrow County did not act as the "virtual representative" of the Umatilla County defendants in the habeas action. The essence of a habeas action is that the defendant has custody of the petitioner. Morrow County did not have custody of Waller at the time of the hearing. While the Umatilla County Jail accepted custody of Waller at the request of Morrow County officials, Umatilla County held Waller pursuant to the authority of a State Board of Parole warrant, rather than any Morrow

County order. It would be unfair to apply offensive collateral estoppel here.

■ I grant summary judgment for the Umatilla County defendants on Waller's claim that his right to be free of unreasonable seizures was violated by his detention at the Umatilla County Jail. There is no dispute but that Umatilla County held Waller pursuant to official teletype communications that the State Board of Parole had issued a warrant for Waller's arrest on October 13, 1981. There is also no dispute that Umatilla County confirmed the warrant by telephone shortly after receiving him. (Umatilla County Defendants' Motion for Summary Judgment, Ex. "A," "B," "E.")

Waller disputes whether Umatilla County received a copy of the warrant while it held him. This does not present an issue of material fact. Oregon law provides that the "written order of the Board [of Parole] is sufficient warrant for any law enforcement officer to take into custody" an alleged parole violator. ORS 144.331(1). Oregon law also provides, however, that an officer need not have a copy of a warrant or order in hand, but may rely on official communications that a warrant exists. Oregon Revised Statutes 133.310(2) provides:

A peace officer may arrest a person without a warrant when the peace officer is notified by telegraph, telephone, radio or other mode of communication by another peace officer of any state that there exists a duly issued warrant for the arrest of a person within the other peace officer's jurisdiction.

Oregon Revised Statutes 133.310(2) modifies Oregon Revised Statutes 144.331(1). Umatilla County was entitled to take custody of Waller under Oregon law.

The federal courts have also held that arrest and detention pursuant to teletype, computer, or verbal notification of an arrest warrant satisfy the fourth amendments' proscription against unreasonable seizures. *E.g., United States v. Roper*, 702 F.2d 984, 988–89 (11th Cir.1983) (officer had probable cause to arrest when relying on radio communication for National Crime Information Center of warrant to defendant's arrest); *Ruiz v. Craven*, 425 F.2d 235, 236 (9th Cir.1970) (same holding where arresting officer did not have arrest warrant in hand but had been informed through official channels of its existence). Even if Umatilla County "seized" plaintiff for purposes of the fourth amendment when it accepted custody of him, it was entitled to rely on the teletype information that a warrant for his arrest had issued. Plaintiff's fourth amendment rights were not violated.

I grant the motion for summary judgment as to the fourth amendment claim.

I also grant the motion as to plaintiff's allegation that his fifth and fourteenth amendment right to due process was violated because he never received a *Morrissey* hearing while incarcerated at the Umatilla County Jail.

In *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), the Supreme Court held that a parolee who has been arrested or detained for a parole violation has a due process right to a preliminary hearing to determine whether there is probable cause that the parolee has violated parole conditions. *Id.* at 485, 92 S.Ct. at 2602. The preliminary hearing should be conducted "at or reasonably near the place of the alleged parole violation or arrest and as promptly as convenient after arrest while information is fresh and sources are available." *Id.*

If probable cause exists, the parolee may demand a more elaborate revocation hearing, which must take place within a "reasonable time" after the parolee is taken into custody. *Id.* at 487, 92 S.Ct. at 2603.

Oregon Revised Statute 144.343 codifies the *Morrissey* requirements in most respects. The statute provides, however, for a combined preliminary and revocation hearing in cases where the hearings officer finds probable cause to believe that parole conditions have been violated. ORS 144.-343(2), 144.343(6). The combined hearing is to be conducted by the State Board of Parole or its "designated representative,"

and must be held "promptly." ORS 144.-343(1).

The parties agree that Waller did not receive a hearing while incarcerated at the Umatilla County Jail. The question here is whether the Umatilla County defendants can be held liable for this.

Defendants cite *Fowler v. Cross*, 635 F.2d 476 (5th Cir.1981). In that case, plaintiff was arrested and incarcerated at a county jail after the state parole commission had issued a warrant for his arrest. The state scheduled a prompt preliminary hearing to be held at the jail. Before the hearing date, the county mistakenly transferred plaintiff to the state prison, which was apparently some distance away. The state held plaintiff there for fifty days, and then transferred him back to the county jail, where the hearing was held. Plaintiff brought an action against county and state officials, alleging that he did not receive a prompt preliminary hearing. The district court granted the county defendants' motion for summary judgment.

The Fifth Circuit affirmed, holding that under state statutes the state parole commission had the duty to afford plaintiff a preliminary hearing. Citing *Baker v. McCollan*, 443 U.S. 137, 145–46, 99 S.Ct. 2689, 2694–2696, 61 L.Ed.2d 433 (1979), the *Fowler* court reasoned that the functions of the county defendants and the state parole commission were reasonably divided under state law. Under this division, the county defendants had no responsibility to afford plaintiff a hearing. Their only duty was to cooperate with the parole commission. That the commission was remiss in its duty to provide plaintiff with a prompt hearing could not serve as the basis for the county's liability. 635 F.2d at 480.

Oregon statutes provide for a similar division of functions. Under Oregon law, the State Board of Parole or its "designated representative" has the responsibility to conduct parole hearings. ORS 144.343(1). There is no indication that Umatilla County served as the Board's designated representative, or that the County had any other duty to hold the hearings under state law.

As a political subdivision of the State of Oregon, Umatilla County was obligated to follow the State Parole Board's directives. The Oregon Attorney General has stated that a county has a statutory duty to hold alleged parole violators on Parole Board orders. 42 Op.Atty.Gen. 225, No. 8090 (1982), *citing* ORS 144.331, 423.020(1). The Attorney General has also stated that county officials have no authority to release an alleged parole violator without the Board's approval or a court order, and that County officials who illegally release a parolee can be criminally and civilly liable for doing so. *Id.* Given Oregon's division of functions, the Umatilla County defendants cannot be held liable in this case for the State Parole Board's failure to schedule a hearing. *See Fowler*, 635 F.2d at 480.

Plaintiff argues that *Fowler* is distinguishable. While the *Fowler* court relied on the division of functions between the county and state defendants, it also noted that the county held plaintiff for only a short time before transferring him to the state prison, which then held him for fifty days before returning him to the county jail for his preliminary hearing. This delay could not be attributed to the county defendants. *Id.* By contrast, Umatilla County had physical custody of plaintiff for fifty-one days, during which a hearing was never held.

Plaintiff argues that the County could not hold him forever, and that at some point it had a duty to either investigate why he had not received a hearing or to release him. Plaintiff argues that because he was held for fifty-one days without a hearing, it should have been plain to the County that a prompt preliminary hearing was long overdue.

■ I disagree. Plaintiff assumes that he was entitled to a prompt preliminary hearing under *Morrissey*. He was not. While he may have been entitled to a prompt combined hearing under Oregon law, *see* ORS 144.343(1), 144.343(3)(g), 144.-343(6), plaintiff's complaint does not allege

a violation of the Oregon statute. I therefore evaluate his claim under *Morrissey.*

In *Moody v. Daggett,* 429 U.S. 78, 97 S.Ct. 274, 50 L.Ed.2d 236 (1976), a released federal parolee was convicted on new charges. Shortly after he was incarcerated on the new convictions, the United States Parole Board issued a parole violator warrant. The Board did not execute the warrant, however, and merely lodged it with prison officials as a detainer. The parolee asked the Board to execute the warrant so that he could serve his sentences on his prior convictions concurrently with the new convictions. The Board refused. The petitioner brought a habeas action, arguing that under *Morrissey* he was entitled to a prompt hearing on the pending parole revocation.

The Supreme Court affirmed the denial of the petition, holding that the parolee was not entitled to a revocation hearing until he had been taken into custody as a parole violator by execution of the warrant. The Court reasoned that the hearing for the new convictions could best be held at the conclusion of the parolee's incarceration, as this would allow the Board to consider his institutional record. 429 U.S. at 87–89, 97 S.Ct. at 278–280. The Court also noted that the parolee's new convictions obviated the need for a preliminary hearing.

In the present case, where petitioner has already been convicted of and incarcerated on a subsequent offense, there is no need for the preliminary hearing which *Morrissey* requires upon arrest for a parole violation. This is so both because the subsequent conviction obviously gives the parole authority 'probable cause or reasonable ground to believe that the ... parolee has committed acts that would constitute a violation of parole conditions,' [citing *Morrissey*] 408 U.S., at 485 [92 S.Ct., at 2602], ... and because issuance of the warrant does not immediately deprive the parolee of liberty. The 1976 Act calls for no preliminary hearing in such cases. 18 U.S.C.

§ 4214(b)(1) (1976 ed.); *see* 28 C.F.R. § 2.48(f) (1976).

429 U.S. at 86 n. 7, 97 S.Ct. at 278 n. 7.

*Moody* is distinguishable on its facts from the present case. Nevertheless, the Ninth Circuit has extended *Moody* to include cases like this one. In *Heinz v. McNutt,* 582 F.2d 1190 (9th Cir.1978), plaintiff committed new crimes while on parole. After being convicted of the new charges, he remained at liberty pending appeal. The state parole board held a preliminary hearing and found probable cause that plaintiff had violated parole. Parole was then automatically revoked without a final hearing pursuant to a state statute that allowed revocation without a hearing if the parolee was convicted of a felony.

The Ninth Circuit struck the statute, finding that parole could not be revoked without a final hearing. While it did not need to reach the issue, the court also found that a preliminary hearing was unnecessary where plaintiff had been convicted of a new crime, citing *Moody* and *Morrissey.* The purpose of a preliminary hearing is to "determine whether there is probable cause or reasonable ground to believe that the arrested person has committed acts that would constitute a violation of parole conditions." *Morrissey,* 408 U.S. at 485, 92 S.Ct. at 2602. The *Heinz* court reasoned that plaintiff's need for a preliminary hearing no longer existed because the new convictions provided the requisite cause to believe that the parolee had violated parole. 582 F.2d at 1193. *See also Mack v. McCune,* 551 F.2d 251, 253 (10th Cir.1977). Because Waller pled guilty to the DWS charge while on parole, there was no need to conduct a prompt preliminary hearing to determine whether there was probable cause to believe that he had violated parole.

■ Waller pled guilty to the DWS charge in 1983. The parole warrant had issued in 1981. That the DWS conviction occurred after the parole warrant issued is irrelevant. In *Johnson v. Chappel,* 327 F.2d 888 (D.C.Cir.1964), plaintiff appealed revocation of his parole. The D.C. Circuit

held that the parole board properly considered evidence of plaintiff's indictment and guilty plea on a new charge, even though the board did not rely on the evidence when it issued a parole violation warrant for plaintiff. *Id.* at 889. Just as a conviction occurring after a parole warrant is issued can be used to justify revocation, such a conviction can also be used to provide probable cause to believe that a parolee has violated parole. Waller was not entitled to a preliminary hearing.

▪ Waller was, however, entitled to a revocation hearing. Preliminary hearings must take place "as promptly as convenient after arrest...." *Morrissey*, 408 U.S. at 485, 92 S.Ct. at 2602. The Ninth Circuit has held that a combined preliminary and revocation hearing which took place twenty-one days after arrest was "prompt." *Pierre v. Wash. St. Bd. of Prison Terms and Parolees*, 699 F.2d 471 (9th Cir.1983). A revocation hearing, however, must take place "within a reasonable time after the parolee has been taken into custody." *Morrissey*, 408 U.S. at 488, 92 S.Ct. at 2603. The Court in *Morrissey* noted that "[a] lapse of two months, as respondents suggest occurs in some cases, would not appear to be unreasonable." *Id.*

Federal statutes provide that a federal parolee must receive a final hearing within sixty days, or within ninety days if the parolee has been convicted of a new offense. The Supreme Court cited these statutes with apparent approval in *Moody.* 429 U.S. at 86 n. 8, 97 S.Ct. at 278 n. 8. Thus a period of sixty or even ninety days between the parolee's arrest and revocation hearing should be reasonable under *Morrissey* when the parolee is convicted of an offense committed during his parole.

▪ Waller was held for fifty-one days without receiving a hearing. It is not necessary to determine whether the Umatilla County defendants had a duty at some point to investigate why he had not received a prompt hearing. A fifty-one day period easily satisfies the requirement that a revocation hearing be held within a reasonable time.

There is also undisputed evidence that Umatilla County was aware that the Board planned to provide Waller with a hearing. A handwritten note on a teletype concerning Waller provides "Theta P & P Salem called—said they would be setting up hearing around middle of June. MG." The note is dated May 17, 1983, and was apparently written by defendant Marie Gard, a jail employee. (Umatilla County Defendants' Motion for Summary Judgment, Ex. "E.") Gard also stated in an interrogatory that she phoned Theta at the Board of Parole on this date, and was advised of the mid-June hearing date. (Umatilla County Defendants' Motion for Summary Judgment, Ex. "I.")

▪ The Umatilla County defendants were entitled to rely on the Board of Parole's statement that it would conduct a *Morrissey* hearing. There is no issue of material fact relevant to the due process claim. The Umatilla County defendants are entitled to judgment as a matter of law on this claim.

Defendants also assert that they are entitled to summary judgment on the due process claim because Waller may not pursue a section 1983 claim for liberty deprivation where there is an adequate remedy in the state courts, citing *Haygood v. Younger*, 718 F.2d 1472, 1481 (9th Cir.1983). The Ninth Circuit has withdrawn the *Haygood* opinion pending reconsideration *en banc. Haygood*, 729 F.2d 613 (9th Cir.1984). The remaining Ninth Circuit opinions on this issue are split. *Compare Rutledge v. Arizona Bd. of Regents*, 660 F.2d 1345, 1352 (9th Cir.1981), (*Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), applies to liberty deprivation claims), *with Wakinekona v. Olim*, 664 F.2d 708, 715 (9th Cir.1981) (*Parratt* does not apply to liberty deprivation claims). I will not grant summary judgment on this ground.

In their summary judgment motion, the Umatilla County defendants do not state whether they seek summary judgment on some or all of plaintiff's claims. Defendants' summary judgment briefs deal with

the unreasonable seizure and due process claims insofar as they are based on the fourth, fifth, and fourteenth amendments to the federal Constitution, and with the mail tampering claim. The briefs do not deal with the cruel and unusual punishment claim or the common law claims. I will not grant summary judgment on these claims without further briefing.

Summary judgment on plaintiff's eighth amendment claim may be warranted. The parties should brief this issue. Should I grant summary judgment with respect to this claim, plaintiff will have no claim based on federal law. The court will lack subject matter jurisdiction, and the action will be dismissed.

### CONCLUSION

The Umatilla County defendants' motion for summary judgment is granted with respect to plaintiff's unreasonable seizure and due process claims, insofar as they are based on the federal Constitution. Plaintiff's mail tampering claim is dismissed with the agreement of plaintiff's counsel. Within twenty days, the parties shall submit briefs on whether the court should grant summary judgment on plaintiff's cruel and unusual punishment claim, insofar as that claim is based on the eighth amendment to the federal Constitution.

### ON EIGHTH AMENDMENT RIGHTS

The Umatilla County defendants move for summary judgment as to plaintiff's claim for violation of his eighth amendment rights. I grant the motion insofar as it is based on the federal Constitution.

Plaintiff does not allege that he was mistreated in any way but for the fact of his initial incarceration and the length of that incarceration. Neither of these events involve a violation of Waller's federal rights to be free from unreasonable seizures or to due process.

Whether plaintiff's rights under state law were violated is unclear. The Oregon courts should decide this issue. Even if the Oregon courts find that plaintiff's rights under state law were violated, this in itself would not involve a violation of the eighth amendment of the federal Constitution. There is nothing in the record indicating that the Umatilla County defendants acted in violation of Waller's federal rights.

As there is no genuine issue as to any material fact, and because the Umatilla County defendants are entitled to judgment as a matter of law, defendants' motion for summary judgment is GRANTED as to plaintiff's eighth amendment claim.

Plaintiff's federal claims are dismissed with prejudice. Plaintiff's state claims are dismissed without prejudice. The action is DISMISSED. The Clerk of the court is directed to enter judgment accordingly.

IT IS SO ORDERED.