882 F.2d 1180
 Anthony Wayne THOMPSON, Plaintiff-Appellant,
v.
Cheryl L. DUKE, Chester J. Pucci, Floyd Cox, Robert Guthrie,
Rita Allen, Harold Thomas, Michael Lane, Paul J. Klincar,
Philip T. Hardiman, Roy Patrick, Dr. William Powell, and the
County of Cook, Defendants-Appellees.
 No. 88-1147.
 United States Court of Appeals,
Seventh Circuit.
 Argued Sept. 30, 1988.
Decided Aug. 14, 1989.
 
 Philip J. Nathanson, Nathanson & Wray, Chicago, Ill., for plaintiff-appellant.
 Frank J. Parkerson, Roman Sukley, Asst. State's Attys., Office of the State's Atty. of Cook County, Karen S. Rosenwinkel, Asst. Atty. Gen., Office of the Atty. Gen., Terry L. McDonald, Joan S. Cherry, Joseph D. Ryan, Asst. State's Attys., Office of the State's Atty. of Cook County, Chicago, Ill., for defendants-appellees.
 Before CUMMINGS, FLAUM, and KANNE, Circuit Judges.
 KANNE, Circuit Judge.
 
 
 1
 While incarcerated and awaiting his parole violation hearing, Anthony Wayne Thompson was severely beaten by another inmate. Thompson brought a section 1983 action against various state defendants, alleging that their failure to schedule and conduct a timely parole violation hearing constituted a deprivation of his constitutionally protected liberty interests. He also sued various county defendants, alleging that their failure to instruct and train their subordinates to investigate independently the status of his case constituted a deliberate indifference to his constitutionally protected interests. The district court granted summary judgment in favor of all of the defendants-appellees. We affirm.
 
 I. BACKGROUND
 
 2
 On July 29, 1982, Anthony Wayne Thompson, a parolee, was arrested for burglary and incarcerated in the Cook County Jail. The next day, a court set his bond at $50,000.00 and scheduled his preliminary hearing for August 12, 1982. On that same day, Thompson's parole officer, Cheryl L. Duke, and her supervisor, Chester Pucci, issued a "parole violation warrant" based upon the burglary charge.[1]
 
 
 3
 On August 12, 1982, Thompson and his counsel appeared at the preliminary hearing on the burglary charge. Counsel called no witnesses and presented no evidence upon Thompson's behalf. The court ultimately determined that probable cause existed to believe that he had committed the offense charged and scheduled a trial for September 20, 1982. Thereafter, Duke, Pucci, and Robert Guthrie, an Illinois Department of Corrections hearing officer, scheduled Thompson's parole violation hearing for September 21, 1982, the day following the trial.
 
 
 4
 After the September 20 trial, the court acquitted Thompson of burglary. He was returned to the Cook County Jail to await his scheduled parole violation hearing. For unknown reasons, Duke, Pucci, and Guthrie did not conduct a parole revocation hearing the next day as planned. Thompson remained in the general prison population and three days later, on the evening of September 24, another inmate of the jail severely beat Thompson. He was hospitalized where his unfortunate situation was compounded by a series of less than desirable medical consequences.[2]
 
 
 5
 After he was released from the hospital, he was returned to Cook County Jail, at which time parole officials conducted a parole revocation hearing. The state found that Thompson had not violated any condition of his parole and he was released. Apparently, the officials did not realize that the parole violation warrant in fact had been formally withdrawn the day before the hearing.
 
 
 6
 Thompson brought a section 1983 action against various state and county defendants. He alleged that the state defendants-appellees, Duke, Pucci, and Guthrie, had violated his due process rights because they did not proceed with, or insure that others would proceed with, a preliminary parole or release violation hearing prior to September 24, 1982, the date Thompson was injured. He made this same charge against the state defendants-appellees, Rita Allen, an Interstate Compact Administrator, Harold Thomas, Guthrie's supervisor, and Floyd Cox, the Illinois Department of Corrections' "relief hearing officer" whom Thomas normally assigned to conduct hearings when Guthrie was unavailable.
 
 
 7
 Finally, Thompson alleged that the state defendants-appellees, Paul J. Klincar, Chairman of the Prisoner Review Board, and Michael Lane, Director of the Illinois Department of Corrections, likewise had violated his fourteenth amendment due process rights by failing to insure his release from detention following his acquittal upon the burglary charge. As to each state defendant-appellee, Thompson charged that he or she in some way was responsible for the timely holding of the constitutionally required hearing and that his or her deliberate indifference to the absence of such hearing constituted a deprivation of his constitutionally protected liberty interest.
 
 
 8
 Thompson also alleged that the county defendants-appellees, Phillip Hardiman, Executive Director of the Cook County Department of Corrections, and Roy Patrick, Superintendent of the Cook County Jail, deprived Thompson of his liberty without due process by:
 
 
 9
 (1) promulgating or maintaining a policy whereby parolees are incarcerated without first making an independent determination of the validity of the incarceration; (2) incarcerating parolees with the general prison population; (3) denying parolees their right to counsel; and (4) failing to train, instruct and supervise subordinate officers as to the status and rights of parolees.
 
 
 10
 Thompson also contended that Hardiman and Patrick were directly responsible for parolees' custody and care, and that they should have released Thompson themselves or, at a minimum, inquired into his status following his acquittal, as well as investigate the state's subsequent failure to hold a preliminary parole hearing. He argued that their "blind following" of the facially valid parole violation warrant constituted deliberate indifference to his constitutionally protected liberty interest.
 
 
 11
 Thompson also alleged that the County of Cook promulgated and maintained a policy and practice "to blindly follow the State Board parole procedures" despite their unconstitutionality. He contended that the county's failure to implement independent policies and procedures to insure the protection of parolees violated his constitutional rights.
 
 
 12
 The district court granted summary judgment on the federal claims and dismissed Thompson's state law claims for want of federal jurisdiction. The district court ruled that, as a matter of law, the state defendants-appellees, as members, officers and employees of the Illinois Prisoner Review Board, enjoyed absolute immunity in the performance of their quasi-judicial activities. The court also ruled that Hardiman and Patrick did not violate Thompson's rights because they relied upon, and were required to follow, the facially valid parole violation warrant. The district court further held that Thompson could not demonstrate that those defendants, or Cook County, had failed to promulgate policy and train their subordinates adequately to protect his rights or that their own activity was the direct cause of his injuries.
 
 II. DISCUSSION
 
 13
 On appeal, Thompson contends that the Supreme Court's decision in Forrester v. White, 484 U.S. 219, 108 S.Ct. 538, 98 L.Ed.2d 555 (1988), decided after the district court rendered its decision, undercuts the state defendants' ability to rely upon a claim of absolute immunity. Thompson also argues that the district court erroneously concluded as a matter of law that Hardiman, Patrick, and Cook County did not violate his due process rights.
 
 
 14
 A. The State Defendants-Appellees' Absolute Immunity Claims
 
 
 15
 As the district court correctly stated, absolute immunity serves to shield a defendant from suit altogether rather than merely acting as a defense to liability. See Mitchell v. Forsyth, 472 U.S. 511, 526, 105 S.Ct. 2806, 2815, 86 L.Ed.2d 411 (1985). Consequently, the district court focused solely, and correctly, upon the state defendants' absolute immunity claims first, noting that it would only reach the liability issue if it found that they did not enjoy immunity. Chief Judge Grady then determined as a matter of law that the state defendants were immune and dismissed the action because Thompson did not join his request for damages with a claim for declaratory or injunctive relief. See, e.g., Pulliam v. Allen, 466 U.S. 522, 104 S.Ct. 1970, 80 L.Ed.2d 565 (1984); Scruggs v. Moellering, 870 F.2d 376, 378 (7th Cir.1989).
 
 
 16
 However, since the district court ruled upon the immunity issue, the United States Supreme Court issued its decision in Forrester in which the Court attempted to redefine the scope of the absolute immunity which judicial officers and persons performing quasi-judicial functions enjoy. The Court noted that "[d]ifficulties have arisen primarily in attempting to draw the line between truly judicial acts, for which immunity is appropriate, and acts simply done by judges. Here, as in other contexts, immunity is justified by the functions it protects and serves, not the person to whom it attaches." 484 U.S. at ----, 108 S.Ct. at 544 (emphasis in original). With this distinction, the Court found that a judge's decision to demote and discharge a probation officer, as was his prerogative under Illinois law, was purely an "administrative decision," which "even though ... may have been essential to the very functioning of the courts," could not be "regarded as [a] judicial act[ ]." Id. The Court ultimately held that such activity may not be shielded from review by a claim of absolute immunity.
 
 
 17
 Thompson does not contest that the state defendants generally enjoy absolute immunity because they in fact are persons who perform duties of an adjudicatory nature "functionally comparable" to the duties of a judicial officer. See, e.g., Walker v. Prisoner Review Bd., 769 F.2d 396, 398 (7th Cir.1985); Trotter v. Klincar, 748 F.2d 1177, 1180 (7th Cir.1984) (involving among others state defendants-appellees Klincar and Guthrie); United States ex rel. Powell v. Irving, 684 F.2d 494, 497 (7th Cir.1982); cf. Stanley v. Indiana Civil Rights Comm'n, 557 F.Supp. 330, 334 (N.D.Ind.1983) (members of Indiana Civil Rights Commission enjoy absolute quasi-judicial immunity); but see Fowler v. Cross, 635 F.2d 476, 481 (5th Cir.1981) (not addressing an absolute immunity claim, but stating that parole board members enjoy qualified immunity); Thompson v. Burke, 556 F.2d 231, 237-38 (3d Cir.1977) (stating that parole board members are not judicial officers, and instead are executive officers who enjoy qualified immunity).[3] Instead, Thompson contends that their actions in this case, which ultimately gave rise to his section 1983 action, cannot be characterized as part of their "adjudicatory" functions. He argues that their conduct was purely "administrative" in nature and thus is not protected after Forrester.[4]
 
 
 18
 Specifically, Thompson argues that the state defendants had a duty to conduct, or at least to insure that he received, a timely preliminary parole revocation hearing. He argues that under Illinois law, Ill.Ann.Stat. ch. 38, p 1003-3-9(c) (Smith-Hurd Supp.1989), and the Supreme Court's holding in Morrissey v. Brewer, 408 U.S. 471, 483-84, 92 S.Ct. 2593, 2601-02, 33 L.Ed.2d 484 (1972), the state defendants had no discretion to deny or postpone a preliminary parole revocation hearing. Consequently, their duty to schedule and hold such a hearing in a timely manner is a purely "administrative function" and thus they cannot claim absolute immunity. Without addressing whether Thompson states a valid section 1983 claim at all, we are convinced that Forrester may not be read so broadly.
 
 
 19
 Forrester clearly was an attempt to stress that courts should recognize a difference between purely administrative activities and those which are a part of the judicial process. However, with this distinction made, the activity which Thompson challenges as "administrative" cannot in fact be so characterized.
 
 
 20
 In Trotter, a case decided before Forrester, we addressed a plaintiff-parolee's section 1983 claim against various officers, members, and employees of the Illinois Department of Corrections and Illinois Prisoner Review Board, including state defendants-appellees Klincar and Guthrie. There, the plaintiff relied upon Morrissey and alleged inter alia, that he "had been improperly denied a prompt preliminary hearing" because the defendants had failed to schedule and conduct a timely hearing. 748 F.2d at 1180. When confronted with the defendants' claims of absolute immunity, the plaintiff argued that the doctrine "reaches only the adjudicatory functions" of the defendants and "that the actions he complain[ed] of relate[d] solely to the administrative or ministerial functions of [the defendants]." Id. at 1182.
 
 
 21
 We agree that this court had "extended absolute immunity to parole boards for their adjudicatory functions only," id., a proposition which we later rejected in Walker, 769 F.2d at 398-99. Nevertheless, we recognized the distinction then,[5] and rejected the plaintiff's attempts to characterize the challenged activity as "administrative," stating:
 
 
 22
 [W]e cannot agree that the actions that are the subject of this dispute are administrative or ministerial.... As the Supreme Court recognized in Butz v. Economou, 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978), the grant of absolute immunity does not depend on the formal description of the official's activities, but rather on the nature of those activities. Id. 438 U.S. at 511-12, 98 S.Ct. at 2913. In light of Butz, we must consider whether the functions upon which the state officials would base their claim for immunity are "functionally comparable" to the activities of the judiciary. See id. at 513, 98 S.Ct. at 2914. These functions include not only the actual decision to revoke parole, but also the activities that are part and parcel of the decision process. See Anderson [v. Boyd, 714 F.2d 906 (9th Cir.1983) ]. All the actions contested here are inexorably connected with the execution of parole revocation procedures and are analogous to judicial action relating to the conduct of trial proceedings and to ruling on motions of counsel.
 
 
 23
 Trotter, 748 F.2d at 1182 (emphasis added).
 
 
 24
 Forrester does not vitiate our holding in Trotter as our recent decision in Scruggs illustrates. In Scruggs, we addressed a plaintiff's charge that a state judge and court reporter falsified the transcript of his criminal trial to prevent him from prosecuting a successful appeal of his conviction. 870 F.2d at 377. We upheld the district court's dismissal of the plaintiff's suit against the state judge and the court reporter on absolute immunity grounds.
 
 
 25
 Citing Forrester, we reaffirmed the fundamental principle that "[a] judge has absolute immunity from damages liability for acts performed in his judicial capacity...." Id. The state judge in Scruggs had a duty under Indiana procedural rules to see to the correct preparation of the trial transcript. Such activity was judicial in nature because it concerned a judicial function. Acts carried out in a judicial capacity, whether based on statute, rule or inherent authority, are absolutely protected from damages liability.
 
 
 26
 In the continuum of judicial proceedings some judicial acts require extensive exercise of a judge's decision-making skills and others do not--yet all such acts make up the judicial function regardless of their isolated importance. In the judicial context, scheduling a case for hearing is part of the routine procedure in any litigated matter. However, the fact that the activity is routine or requires no adjudicatory skill renders that activity no less a judicial function.
 
 
 27
 Here, as in Trotter, the state defendants clearly had a duty to schedule and conduct a parole violation hearing. Such activity, while perhaps routine in many cases, is obviously an integral judicial (or quasi-judicial) function subject to absolute immunity.
 
 
 28
 Indeed, if we were to adopt Thompson's interpretation of Forrester, we would effectively subject judicial officers, as well as persons performing quasi-judicial functions, to unlimited litigation testing whether particular judicial functions, alleged to be mechanical or routine, were entitled to immunity from damages liability. We need not search far for a closely analogous example. If scheduling a hearing is not a part of an adjudicatory or judicial function, then an action could be maintained against a judge for injuries to an incarcerated defendant resulting from the judge's alleged failure to schedule a hearing or trial within an applicable speedy trial limitations period, or the judge's alleged failure to conduct a hearing or trial on the date scheduled. By the same token, if the judge purportedly failed to properly execute his duty to advise a criminal defendant of certain constitutional and statutory rights, yet accepted a guilty plea and incarcerated the defendant, under Thompson's rationale an action could be maintained against the judge for damages liability if the defendant is injured while in custody awaiting the outcome of his challenge to the court's methodology.
 
 
 29
 Such situations are foreclosed by Forrester, which confirmed absolute immunity from damages for all acts carried out as a part of the judicial function. Absolute judicial immunity was removed only for that narrow range of purely administrative acts, such as employment decisions, which are unrelated to the judicial function.
 
 
 30
 The policy reasons for affording absolute judicial immunity are set forth in Forrester. It is sufficient to say that judicial decision-making without absolute immunity would be driven by fear of litigation and personal monetary liability. Such opportunity for intimidation and retaliation constitutes a fundamental and unacceptable threat to an independent and impartial judiciary. The same rationale applies to those officers and agencies that perform quasi-judicial functions.
 
 
 31
 Thompson's contentions, to the extent that they are based upon the state defendants' duty to insure that other officials scheduled or conducted a timely parole revocation hearing, are likewise unmeritorious. We therefore affirm the district court's decision that the state defendants are absolutely immune from suit.
 
 
 32
 B. The County Defendants Hardiman and Patrick
 
 
 33
 The district court granted the county defendants', Hardiman and Patrick, motion for summary judgment on Thompson's section 1983 claim. Thompson offers three separate bases for his assertion that Hardiman and Patrick should be held liable for the alleged deprivation of his constitutional rights: (1) that Hardiman and Patrick had a duty to investigate his status as a parolee, (2) that Hardiman and Patrick, or their subordinates, knew that his rights had been, or were being, violated and that they failed to protect his interests, either by taking some action themselves or having in place a process by which their subordinates could take action, and (3) that even if Hardiman and Patrick had a duty to hold him under the "facially valid warrant," their duty to obey the state's mandate disappeared once he was acquitted of the charge underlying the warrant. Again without making any determination whether Thompson in fact states a cognizable cause of action under section 1983, we must reject Thompson's contentions.[6]
 
 
 34
 In Baker v. McCollan, 443 U.S. 137, 145, 99 S.Ct. 2689, 2695, 61 L.Ed.2d 433 (1979), the Supreme Court considered a plaintiff's section 1983 action for false imprisonment based upon a sheriff's negligent failure "to establish certain identification procedures which would have revealed that [he] was not the man wanted in connection with the drug charges on which he was arrested" pursuant to an otherwise valid arrest warrant. Id. at 139, 99 S.Ct. at 2692. The Court held that someone executing an arrest warrant is not "required by the Constitution to investigate independently every claim of innocence, whether the claim is based on mistaken identity or a defense such as lack of requisite intent." Id. at 145-46, 99 S.Ct. at 2695. The Court further held, "Nor is the official charged with maintaining custody of the accused named in the warrant required by the Constitution to perform an error-free investigation of such a claim." Id. at 146, 99 S.Ct. at 2695.
 
 
 35
 On the basis of McCollan, Hardiman and Patrick, as mere jailers, only had a duty to determine the facial validity of the warrant under which Thompson was held; they had no independent duty to investigate Thompson's claims of innocence. See also Ill.Ann.Stat. ch. 125, paragraphs 18, 203 (Smith-Hurd 1967 & Supp.1989); Fowler, 635 F.2d at 480; Zuranski v. Anderson, 582 F.Supp. 101, 108-09 (N.D.Ind.1984) (Indiana law); accord People ex rel. Johnson v. Pate, 47 Ill.2d 172, 174, 265 N.E.2d 144, 146-47 (1970), cert. denied, 402 U.S. 976, 91 S.Ct. 1679, 29 L.Ed.2d 141 (1971).[7] Furthermore, the facial validity of the warrant was not undercut by Thompson's acquittal on the burglary charge.
 
 
 36
 Illinois law specifically mandates that state officials and agencies should monitor the status of parolees, investigate parole violation charges, and conduct parole revocation hearings, not the jailers. Ill.Ann.Stat. ch. 38, paragraphs 1003-3-1, 1003-3-2, 1003-3-7, 1003-3-9(a)(3)(B)(iv) (Smith-Hurd Supp.1989); Ill.Ann.Stat. ch. 125, p 203 (Smith-Hurd 1967 & Supp.1989); accord People v. Gillespie, 45 Ill.App.3d 686, 360 N.E.2d 133, 4 Ill.Dec. 386 (1977). Thus, Hardiman and Patrick cannot be faulted for failing to investigate an inmate's protestation of a procedural irregularity completely beyond the scope of the jail administration's responsibilities. As a practical matter, Hardiman and Patrick had no way of knowing whether the state defendants had some legitimate reason to hold a parole hearing even after his acquittal.
 
 
 37
 For example, at oral argument, counsel for Thompson stated that the standard by which a parole revocation is judged is a preponderance of the evidence. This statement in fact may overstate the standard by which parole is revoked. For example, many courts have found that in parole revocation "all that is required is that the evidence and facts reasonably demonstrate that the person's conduct has been as good as required by the terms and conditions of the release...." See, e.g., Mack v. McCune, 551 F.2d 251, 254 (10th Cir.1977) (per curiam ); Robinson v. Benson, 570 F.2d 920 (10th Cir.1978). We agree with the just-quoted statement of law and note the then obvious: the evidence could easily support revocation of his parole even though it does not meet the more stringent "beyond a reasonable doubt standard" employed in determining guilt.[8]
 
 
 38
 We note that dismissal of the charges underlying a parole violation warrant has been found of no consequence in the state's determination of a parole violation. See, e.g., Gholston v. Jones, 848 F.2d 1156, 1160 (11th Cir.1988); Taylor v. United States Parole Comm'n, 734 F.2d 1152, 1155 (6th Cir.1984); Robinson, 570 F.2d at 923. Furthermore, courts have observed that an appellate court's decision to overturn a conviction which was related to the state's decision to revoke parole is of no consequence to that decision. See, e.g., Taylor, 734 F.2d at 1155. Finally, courts have noted that outright acquittal on the charges underlying the parole violation charge does not control the state's decision to revoke parole. See, e.g., Steinberg v. Police Court of Albany, N.Y., 610 F.2d 449, 451-52 (6th Cir.1979) (citing Mack, 551 F.2d at 254).
 
 
 39
 With these decisions to guide us, we find no merit in Thompson's contentions. Thompson cannot question the validity of the warrant because he cannot demonstrate that "as a matter of law the acquittal of the state charges removed all factual support from the parole revocation...." Mack, 551 F.2d at 254 (emphasis in original); see also Robinson, 570 F.2d at 923.
 
 
 40
 Based upon McCollan, Illinois statutory law, and Thompson's inability to attack the facial validity of the warrant, we hold that Thompson's arguments must fail. We therefore hold that the district court properly entered summary judgment in favor of Hardiman and Patrick.
 
 C. The County of Cook
 
 41
 Thompson also appeals the district court's decision to grant Cook County's motion for summary judgment. The district court concluded that Cook County's "practice of simply following state law is not the promulgation or maintenance of a practice which directly causes injury." Thus, the court refused to impose section 1983 liability upon Cook County for its alleged violation of Thompson's constitutional rights.
 
 
 42
 In Monell [v. Dept. of Social Serv. of City of N.Y., 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)], the Supreme Court held "that a municipality can be found liable under Sec. 1983 only where the municipality itself causes the constitutional violation at issue." City of Canton v. Harris, --- U.S. ----, ----, 109 S.Ct. 1197, 1203, 103 L.Ed.2d 412 (1989) (discussing Monell ) (emphasis in original). The Court has noted that the issue is "whether there is a direct causal link between a municipal policy or custom, and the alleged constitutional deprivation." Id. Nevertheless, Thompson argues that Cook County is liable for its "failure to train" its employees--Hardiman, Patrick, and their subordinates--under the Supreme Court's recent decision in City of Canton. There, the Court held that a municipality may be found liable under section 1983 if the deprivation results from its "failure to train" its employees, but "only where the failure to train amounts to deliberate indifference to the rights of the persons with whom [its employees] come into contact." Id. at ----, 109 S.Ct. at 1204.
 
 
 43
 The problem with Thompson's "failure to train" argument, and his corresponding argument that the county promulgated a "policy" of "blindly following" the state's decisions, is that Cook County itself has no authority to train the employees involved or to set the policies under which they operate. The Cook County Jail, and the Cook County Department of Corrections, are solely under the supervision and control of the Sheriff of Cook County. See Ill.Ann.Stat. ch. 125, paragraphs 202, 203 (Smith-Hurd 1967 & Supp.1989). The Sheriff is an independently-elected constitutional officer who answers only to the electorate, not to the Cook County Board of Commissioners. Ill. Const. Art. VII, Sec. 4(c); see also Baltz v. County of Will, 609 F.Supp. 992, 995 (N.D.Ill.1985); Thomas v. Talesky, 554 F.Supp. 1377, 1378-79 (N.D.Ill.1983). Consequently, Thompson cannot maintain a section 1983 action against Cook County for "practices, policies, or actions" which are unrelated to that entity. We therefore affirm the district court's grant of summary judgment in favor of Cook County under Monell.III. CONCLUSION
 
 
 44
 We hold that the district court correctly found that the state defendants were absolutely immune from suit in light of the quasi-judicial nature of their activities. We also hold that the district court correctly entered summary judgment in favor of the county defendants, Hardiman and Patrick, and Cook County. Thompson cannot demonstrate that any entity other than the state had the responsibility for conducting the allegedly untimely parole revocation hearing.
 
 
 45
 The district court's decision is in all respects AFFIRMED.
 
 
 
 [1]
 Thompson purportedly did not attempt to make bail on the burglary charge because of the pending parole violation warrant
 
 
 [2]
 According to Thompson, he was handcuffed and shackled while he awaited treatment in the hospital. His pain was discounted by physicians. Further, when surgeons attempted to treat his head fractures a few days later, they "broke a drill bit off in his head," a fact which he alleges that they attempted to conceal, and simultaneously spread an already serious infection, now chronic, throughout his body. Thompson's suit included claims against the persons who were responsible for the allegedly deficient medical care. Those claims are not involved in this appeal
 
 
 [3]
 We, like the district court, do not think that a significant distinction exists between the duties performed by those defendants who are members of the Department of Corrections and those defendants who are members of the Prison Review Board. A defendant's function, not the title which he holds, determines the scope of his immunity claim. This proposition is especially true after Forrester. See 108 S.Ct. at 544. Thus, because all of the defendants played a very similar role in this case, their claims of absolute immunity will either stand or fall as a group. Trotter, 748 F.2d at 1182 n. 5
 
 
 [4]
 In Morrissey, the Supreme Court established certain procedures which must be observed for revocation of parole. The Court did not consider any claims of immunity, either absolute or qualified. We thus cannot import any particular significance to the Court's use of the word "administrative." Instead, we must focus upon the judicial nature of the final decision, as we discuss below in connection with Trotter
 
 
 [5]
 In Walker, decided after Trotter, we stated that "[t]his circuit ha[d] declined to accept a distinction between adjudicatory actions by Board members ... and administrative actions," and cited Trotter for this proposition. 769 F.2d at 398. However, we did not discuss the plain language in Trotter, quoted above, which acknowledged that we in fact recognized a distinction between adjudicatory and administrative activity, but declined to characterize the challenged conduct as administrative rather than adjudicatory. Trotter, 748 F.2d at 1182. Thus, our decision to no longer recognize the distinction has little, if any, effect upon our statements in Trotter because they were made at a time when we clearly recognized the distinction which Forrester now makes explicit. The validity of our discussion in Trotter is further supported by our recent decision in Scruggs, which we discuss at length below
 
 
 [6]
 It is unclear whether Thompson is challenging the county defendants' failure to insure that he received a timely preliminary parole violation hearing, a final revocation hearing, or both. In his briefs, Thompson initially contends, with respect to the state defendants, that he had a right to have an independent preliminary parole revocation hearing conducted, relying upon Morrissey, 408 U.S. at 485-87, 92 S.Ct. at 2602-03. However, we cannot determine whether he makes this same argument with respect to the county defendants
 He apparently concedes that a preliminary hearing on the offense underlying the parole violation warrant, at which time the trial court determines if probable cause exists to hold the defendant for trial, serves many, if not all, of the policies discussed in Morrissey. See, e.g., Waller v. Drago, 611 F.Supp. 405, 412 (D.Or.1985). In fact, Illinois law now specifically provides that a preliminary hearing is unnecessary when "revocation is based upon new criminal charges and a court finds probable cause on the new charges...." Ill.Ann.Stat. ch. 38, p 1003-3-9(c) (Smith-Hurd Supp.1989). As we recognized in Trotter, 748 F.2d at 1179 n. 2, such a provision adequately serves the interests discussed in Morrissey.
 In any event, Thompson appears to be concerned primarily with the county defendants' alleged failure to insure that the state defendants either held the September 21st hearing as scheduled, or released him immediately following his acquittal on September 20th. Therefore, we likewise will concentrate upon the alleged failure to hold a timely final parole revocation hearing.
 
 
 [7]
 Thompson attempts to argue that McCollan does not apply because it dealt with a jailer's "pretrial" detention of an "innocent" person, rather than post-trial detention in which the person has in fact been acquitted. Because, as we discuss below, the state had a right to conduct a parole revocation hearing even following his acquittal on the underlying charge, Thompson was not an "innocent" person being detained; his "innocence" on the parole violation charge had not been determined. Thus, McCollan clearly applies
 
 
 [8]
 As a further example, depending upon the record in an individual case, the evidence adduced during the formal trial might indicate that a parolee was carrying a weapon, a clear violation of a mandatory condition of every parolee's parole. See Ill.Ann.Stat. ch. 38, p 1003-3-7(a)(2) (Smith-Hurd Supp.1989)