**Mario DEGENOVA, Plaintiffs,**

v.

**SHERIFF OF DuPAGE COUNTY, Deputy Sheriff Burtucca, and Robert J. Stahurski, Defendants.**

**No. 97 C 7208.**

United States District Court,
N.D. Illinois,
Eastern Division.

May 6, 1998.

Kenneth N. Flaxman, Kenneth N. Flaxman, P.C., Chicago, IL, for Plaintiff.

Ellen L. Champagne, DuPage County State's Attorney's Office, Wheaton, IL, for Defendant Deputy Sheriff Burtucca.

Jerome H. Torshen, Robert James Slobig, Thomas Jefferson Ramsdell, Torshen, Spreyer & Garmisa, Ltd., Chicago, IL, for Defendant Robert J. Stahurski.

Kenneth N. Flaxman, Kenneth N. Flaxman, P.C., Chicago, IL, for Counter–Defendant Mario Degenova.

### MEMORANDUM AND ORDER

MORAN, Senior District Judge.

Plaintiff Mario DeGenova brought this action under 42 U.S.C. § 1983 alleging that his

constitutional rights were violated when he was arrested and taken into custody by the Sheriff of DuPage County (and other defendants not party to the instant motion). In his complaint, DeGenova alleged that the Sheriff of DuPage County is liable in his official capacity for this offense. Defendant has moved to dismiss on the ground that he is an officer of the State of Illinois and is therefore immune from suit under the Eleventh Amendment. For the reasons stated herein, defendant's motion to dismiss is denied.

## BACKGROUND

In considering a motion to dismiss under Fed.R.Civ.P. 12(b)(6) for failure to state a claim, we accept all well-pled factual allegations in the complaint as true and draw all reasonable inferences from these facts in favor of the plaintiff. *Travel All Over the World, Inc. v. The Kingdom of Saudi Arabia,* 73 F.3d 1423, 1429 (7th Cir.1996). Read in this light, the facts are as follows:

On October 2, 1996, Robert J. Stahurski signed a complaint in which he falsely alleged that plaintiff Mario DeGenova had committed the misdemeanor offense of causing property damage to Stahurski's lawn. (The complaint does not explain the relationship between DeGenova and Stahurski.) Pursuant to Stahurski's complaint, an Illinois state judge apparently issued an arrest warrant for DeGenova and set bond on the warrant at five thousand dollars. On October 16, 1996, two DuPage County deputy sheriffs, one of whom was Sheriff Burtucca, entered DeGenova's home and arrested him. At this point, DeGenova claims that he informed Burtucca that he had a cardiac condition which required medication. DeGenova further claims that Burtucca ignored this request both at the time of the arrest and throughout the period of detention, which ended the evening of October 17, 1996. As a result, DeGenova suffered serious medical harm. In his complaint,' DeGenova claims that the sheriff's neglect of his medical condition amounted to a deprivation of his rights under the Fourth and Fourteenth Amendments.

## ANALYSIS

### I. State Officers and Eleventh Amendment Immunity

Plaintiff DeGenova has brought suit under 42 U.S.C. § 1983, which provides: "Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State ... causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution ... shall be liable ..." The Supreme Court has interpreted the term "person" to include not only natural persons, but legal persons as well, such as states, municipalities and local governments. *Monell v. New York City Dept. of Social Services,* 436 U.S. 658, 690, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

■ Plaintiff alleges that the sheriff is liable in his official (as opposed to individual) capacity. Courts regard official capacity suits as actions against the government entity itself because the real party in interest is deemed to be the entity that promulgated the offending policies. *Graham,* 473 U.S. 159, 166, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985). Thus, in an official capacity suit a plaintiff can bring his claim against the state directly, provided that the state government had waived its sovereign immunity under the Eleventh Amendment with respect to such actions. *Id.* at 167, 105 S.Ct. 3099; *see also Brandon v. Holt,* 469 U.S. 464, 105 S.Ct. 873, 83 L.Ed.2d 878 (1985). Unlike states, local governments do not have the protection of sovereign immunity and are liable under § 1983 for those of its policies that cause constitutional torts. *Monell* 436 U.S. at 694, 98 S.Ct. 2018. The offending policy does not have to be a formal or written law or procedure. *Id.* It might be an informal practice or policy set or adhered to by the local government's lawmakers, "or by those whose edicts or acts may fairly be said to represent official policy." *Id.* To determine liability a court must "identify those officials or governmental bodies who speak with final policymaking authority for the local governmental actor concerning the action alleged to have caused the particular constitutional or statutory violation at issue." *McMillian v. Monroe*

*County, Alabama,* 520 U.S. 781, 117 S.Ct. 1734, 1736, 138 L.Ed.2d 1 (1997) *citing Jett v. Dallas Independent School Dist.,* 491 U.S. 701, 737, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989). Those persons then might be held liable in their official capacity.

■ It is well established that sheriffs in Illinois have, to some extent, the power to make policy with respect to law enforcement matters, including the treatment of persons in temporary custody and the investigation of certain crimes. *Moy v. County of Cook,* 159 Ill.2d 519, 203 Ill.Dec. 776, 640 N.E.2d 926, 929 (1994) (holding that in certain situations the county has no authority to control the office of the sheriff as it would one of its employees or agents). What we must determine is whether in this capacity the sheriff is an arm of the state or acts as an independent constitutional officer. We conclude that in Illinois the sheriff is an independent constitutional officer at the county level and, as a result, is not protected by the Eleventh Amendment.

Defendant relies heavily on *McMillian v. Monroe County, Alabama,* in which the Supreme Court considered the issue of whether Alabama sheriffs represented the State of Alabama or the sheriff's county when they were performing law enforcement activities such as criminal investigation. 117 S.Ct. at 1736. As in the instant case, the parties in *McMillian* agreed that the sheriff was in a policymaking position, but disagreed over whether he was an officer of the state (in which case he might have been immune from suit) or an officer of the county when acting in a law enforcement capacity. *Id.* In ruling that the sheriffs were state officers, the Court made several observations. First, it emphasized that the determination was issue-specific, *i.e.* the fact that the sheriffs were state officers for law enforcement purposes did not mean that they might not be considered county officers for another purpose. *Id.* at 1737. Second, it ruled that the determination was dependent on an analysis of state law, particularly "the definition of the official's functions" as defined by the state. *Id.* The Court also observed that "States have wide authority to set up their state and local governments as they wish," and consequently

there could be no uniform national characterization for all sheriffs. *Id* at 1741.

The Court then examined several different aspects of the Alabama constitution, court decisions and codes before concluding that the sheriffs were state officers. With respect to the state's constitution and the judicial opinions on the topic, the Court observed that: 1) Before *certiorari* was granted the Eleventh Circuit had ruled that the sheriff was not a policymaker for the county and considerable deference was to be given to that court's more extensive familiarity with Alabama law; 2) The Alabama constitution states that the sheriffs are part of the state executive department; 3) As originally written the Alabama constitution did not contain this classification and had been deliberately altered by amendment to so provide in 1875; 4) In 1901 the constitution was amended to provide that the governor could order the impeachment of the sheriff and that the sheriff could then be tried for neglect of his duties; 5) This provision on impeachment also applies to state judges and state legal officers (but apparently not county officials); 6) "Critically," the Alabama Supreme Court had interpreted the above provisions and unequivocally concluded that sheriffs were state officers and tort claims levied against them were consequently suits against the state; 7) That court had also ruled that Alabama counties were not liable for the sheriff's acts under a theory of *respondeat superior* and that sheriffs were absolutely immune from liability based on their official actions. *Id.* at 1736–39. The Supreme Court found that although the Alabama code was less definitive on the subject, there were certain provisions that supported its interpretation: 1) The sheriffs were required to attend upon and serve orders of the state courts, including those not within the sheriff's own county; 2) State judges had the power to order sheriffs to act, and the presiding judge had a general power of supervision over sheriffs, as with other state employees; 3) Importantly, the sheriffs had complete authority to enforce the state criminal law in their counties while counties were given no law enforcement power; 4) The sheriff had the duty to report crime to the state district attorney, not the county commissioner, and the county

commissioner had no power over the manner in which the sheriff pursued his law enforcement objectives, while the governor and attorney general did have that power; and 5) The sheriff enforces state law.[1] *Id.* at 1739. Finally, the Supreme Court observed that the following factors were not sufficient to overcome their determination that sheriffs were truly state officers: 1) The sheriff's salary was paid by the county treasury (because this did not indicate any level of control); 2) The county was bound to provide the sheriff's equipment; 3) The sheriff's jurisdiction was limited to the county borders; 4) The sheriff was locally elected. *Id.* at 1740. For all these reasons the Supreme Court concluded that the sheriff in *McMillian* was immune as a state officer.

Defendant insists that *McMillian* controls here and requires us to conclude that the DuPage County sheriff is a state officer who falls within the Eleventh Amendment. We disagree. Although the Supreme Court's analysis is relevant in determining whether the sheriff acts on behalf of the state, it takes us no farther. For the reasons stated below we find that the sheriff is not a state officer. He is an independent constitutional officer who does not act on behalf of the state. Several factors, some drawn from *McMillian*, lead us to this conclusion.

Although there is obviously no lower court opinion in this case, the Seventh Circuit has twice considered whether Illinois counties are liable under § 1983 for the sheriff's actions and twice concluded that the county was *not* liable. *See Ryan v. County of DuPage*, 45 F.3d 1090, 1092 (7th Cir.1995) (holding that the county was properly dismissed from a § 1983 claim because the county was not responsible for the sheriff's employees' alleged conduct); *Thompson v. Duke*, 882 F.2d 1180, 1187 (7th Cir.1989) (holding that the plaintiff could not bring a § 1983 action against the county for the policies, practices and customs of the county's sheriff with respect to the operation of the county jail). Neither *Ryan* nor *Thompson*, however, employed an analysis as extensive as the Su-

preme Court has since determined is necessary in *McMillian.* Nor, in fact, is either case truly on point. In *Thompson*, the Seventh Circuit ruled that Cook County could not be held responsible for the policies governing the operation of the Cook County Jail and the Cook County Department of Corrections that allegedly resulted in a violation of the plaintiff's constitutional rights, because under Illinois law the "[s]heriff is an independently-elected constitutional officer who answers only to the electorate, not to the Cook County Board of Commissioners." *Thompson*, 882 F.2d at 1187 *citing* Ill. Const. Art. VII, § 4(c). However, the *Thompson* court did not find that sheriffs were state officers, nor did it consider that issue.

In *Ryan*, the Seventh Circuit simply relied on *Thompson* to perfunctorily conclude that a county could not be held liable when its sheriffs allegedly violated plaintiff's First and Fourth Amendment rights by arresting him after he refused to remove an air-filtration mask while present in the courthouse. *Ryan*, 45 F.3d at 1092. The Seventh Circuit did not address the fact that the case dealt with the sheriff's law enforcement duties and functions, rather than his operation of and policy concerning the jail, a distinction that prior to *McMillian* may have seemed somewhat unimportant. However, the *McMillian* ruling made it clear that sheriffs might be considered county officers for one purpose, and state officers for another. 117 S.Ct. at 1737.

In the aftermath of *McMillian*, Judge Coar reached a contrary conclusion in *Hernandez v. County of DuPage*, 1997 WL 598132, *8 (N.D.Ill. Sept.19, 1997). While he reasoned that the county could be liable for the acts of its sheriff because the sheriff was a county, not a state, officer, a conclusion to which we do not necessarily subscribe, his analysis of sheriff as county officer is persuasive. That determination is consistent with earlier cases, such as *Jackson v. Doria*, 851 F.Supp. 288, 290 (N.D.Ill.1994), that denied Eleventh Amendment protection to Illinois sheriffs.

---

**1.** As an aside, we cannot understand why the Supreme Court would find the fact that the sheriff enforces state law relevant to the issue. All law enforcement officers, whether state, county or municipal, enforce state law.

Certain provisions of the Illinois constitution strongly support this conclusion. First, Article II, titled "Powers of the State," provides that "The legislative, executive and judicial branches are separate." Ill. Const., Article II, § 1. No other state branch, agency or division is mentioned. Each branch has an Article devoted to describing its officers, powers, functions and purpose: Article IV on "The Legislature," Article V on "The Executive," and Article VI on "The Judiciary." Sheriffs are not provided for in any of these Articles. Instead, that office is dealt with in Article VII, titled "Local Government," Section 4(c) of which provides that sheriffs are "county officers." Section 4(d) deals with the termination of local offices, and provides that all of the county offices can be eliminated by county referendum. The same section specifically provides that although most county offices can be alternatively eliminated by state law, the sheriff's position cannot be. *Id.* The power to eliminate the sheriff's position thus rests entirely with the county electorate and is beyond the purview of state power. Moreover, the powers, duties and function of the sheriff are set both by state and county ordinance. Ill. Const. Art. VII, § 4(d). In addition, unlike Alabama, no section of the constitution allows for the impeachment of sheriffs, although a provision designed to prevent vigilante mob violence and the hanging of prisoners while sheriffs willingly turned their backs provides that the governor can suspend the sheriff if a prisoner in his custody is lynched. 720 ILCS 5/25–2; *People ex rel. Davis v. Nellis*, 249 Ill. 12, 94 N.E. 165, 167 (1911) (explaining the purpose of the suspension provision). Additionally, and according to the U.S. Supreme Court quite importantly, the Illinois Supreme Court clearly regards sheriffs as officers of the county.

In *Moy v. County of Cook,* the Illinois Supreme Court ruled that counties cannot be held liable for a sheriff's tortious conduct in the course of performing his official capacity on a theory of *respondeat superior.* 159 Ill.2d 519, 203 Ill.Dec. 776, 640 N.E.2d 926, 929–31 (1994). The court so ruled on the grounds that although the sheriff *was* a county officer, he was not a county *employee* and therefore was not in the master/servant or principal/agent relationship with the county that would be required to impute liability on a *respondeat* basis. *Id.* The *Moy* court's finding that the sheriff acts not as an agent of the county, or at the direction of the county, but instead as a branch or part of the county itself, only further intensifies our conclusion that in Illinois sheriffs make policy on behalf of the county more clearly than they do on behalf of the state.

As observed by Judge Coar in applying the *McMillian* analysis, several other aspects of Illinois law and policy indicate that the sheriffs are properly regarded as county officers and policymakers: [2]

> The number of deputies that a county sheriff can appoint may not exceed the number set by the county board. 55 ILCS 5/3–6008. While the powers and duties of sheriffs are defined by state law, they are also defined by county ordinance and may be altered by ordinance. Ill. Const., Art. VII, § 4(d). Thus, even though a county board has no power to alter a sheriff's duties with respect to his management of the county jail, see *Moy*, 203 Ill.Dec. 776, 640 N.E.2d at 929, it is clear that county boards may exercise control over the sheriff in other areas. See 55 ILCS 5/5–1087 ("A county board may alter any other duties, powers or functions or impose addi-

2. The footnotes to the following passage from *Hernandez* are as follows:

Footnote 6:

The County cites to 55 ILCS 5/3–6021 for the proposition that the Sheriff's "law enforcement duties may not be altered in any way by a county board." (County Reply, at 4). However, § 3–6021 does not require such a conclusion. That section simply states as follows: Conservator of the peace. Each sheriff shall be the conservator of the peace in his or her county, and shall keep the same, suppress ri-

ots, routs, affrays, fighting, breaches of the peace, and prevent crime; and may arrest offenders on view, and cause them to be brought before the proper court for trial or examination.

Footnote 7:

The court reads McMillian to hold that the proper analysis relates to whether the state or the county is the entity liable for the complained-of acts of the sheriff, and not whether an independent third party (i.e., the sheriff) is the proper Monell defendant.

tional duties, powers and functions upon county officers [such as sheriffs].". In fact, one Illinois court seems to have rejected the argument that county boards have no control over how criminal incidents are investigated. In *McDonald v. County Board of Kendall County*, 146 Ill. App.3d 1051, 100 Ill.Dec. 531, 497 N.E.2d 509 (2d Dist.1986), the Illinois Appellate Court held that "investigatory responsibilities are the exclusive domain of no one county officer." *Id.* at 512. The court in *McDonald* therefore concluded that the defendant county board in that case was within its powers in creating an "investigations" item in the county budget and dividing those funds equally between the State's Attorney and the sheriff. *Id.* at 512–13.[6]

While the court cannot say that Illinois counties exercise a great deal of control over county sheriffs, they clearly exercise more control over county sheriffs than do counties in Alabama. Moreover, the fact that the County Board has little or no direct control over an Illinois sheriff underscores the latter's role as final policymaker on law enforcement issues. It provides little help on answering the corollary question as to whether he is the final policymaker for the County or for some other entity. The overall organization of the county system in Illinois suggests that sheriffs, as county officials, make policy for the county and not for the State nor simply for their own departments.[7] For these reasons, the court concludes that, based on Illinois law, a sheriff is the final policymaker (on law enforcement issues) for the county in which she is elected.

We also note that the county is required to indemnify any person who suffers physical or property harm because of the sheriff's or a deputy's misconduct. 55 ILCS 5/5–1002; *Holda v. County of Kane*, 88 Ill.App.3d 522, 43 Ill.Dec. 552, 410 N.E.2d 552 (2 Dist.1980) (holding that a sheriff is a county officer whose duties are meant to benefit the county at large and thus the county is liable on a theory of *respondeat superior* for the sheriff's negligence in the execution of his official duties). Additionally, although the sheriff's powers and duties tend to be broadly drafted, Illinois courts tend to narrowly construe such grants and emphasize the role of the county with respect to the sheriff's office. *See, e.g., Schalz v. McHenry County Sheriff's Dep't Merit Comm'n*, 113 Ill.2d 198, 100 Ill. Dec. 553, 497 N.E.2d 731 (1986) (holding that although the sheriff is granted "control over the internal operations of his office" by statute, and that this grant would appear to give the sheriff broad powers, this language should be read in light of the entire statute which makes it clear that the sheriff controls only the fiscal operations of his office); *Consolidated Chem. Lab., Inc. v. County of Cass*, 322 Ill.App. 53, 53 N.E.2d 738 (3 Dist.1944) (holding that although the sheriff was entrusted with the care of the courthouse, he could not take the supplies needed to fulfill this task on the county's credit without approval of the county board).

Defendant argues that Judge Coar's opinion was wrongly decided for four reasons. First, he claims that Judge Coar based his opinion on the fact that the sheriff is classified as a "county officer" in the Illinois constitution. He argues that such reliance not only disregarded the Supreme Court's mandate in *McMillian* that labels not control the analysis, but also that it "fails to recognize that the Illinois Supreme Court has determined that Illinois sheriffs are not agents of the county" (def. mem. in reply at 3). For reasons evident from the above analysis, we disagree. First, as explained above, in *Moy,* the Illinois Supreme Court considered the issue of whether a sheriff in Illinois was an agent/employee/servant of Cook County for purposes of determining whether the county could be held responsible for the sheriff's acts on the theory of *respondeat superior. Moy,* 640 N.E.2d at 928. The court found that for the county to be held liable the sheriff would have to be considered an employee of the county. *Id.* The court then distinguished the concepts of "officers" and "employees," finding that although the sheriffs were county officers, they were not employees of Cook County and thus the theory of *respondeat superior* did not apply. *Id.*[3]

**3.** Interestingly, the *Moy* court defined "officers"

in part as persons who "exercise some portion of

Defendant further argues that Judge Coar's reliance on the fact that sheriffs are classified as county officers in the Illinois constitution contradicted the Supreme Court's ruling in *McMillian*. Although the Supreme Court in *McMillian* refused to rely solely on the label applied to the sheriff's office by the state, the state constitution's classification of a particular office is certainly relevant and should be considered in the entire analysis. The Supreme Court in *McMillian* acknowledged this when it examined whether the sheriffs in Alabama were listed as members of the executive department. 117 S.Ct. at 1738. What is even more revealing, and what the *McMillian* court focused on, is where the sheriff's office fits into the structure of the state constitution and consequently the structure of the state government. In our case, an analysis of the constitutional text clearly indicates a strong connection between the sheriff and the county. Finally, we note that as we have here, Judge Coar relied on many aspects of Illinois law in addition to the simple labels of the Constitution.

Defendant next argues that we should not rely on Judge Coar's opinion because his assertion in *Hernandez* that "the county board recommends an annual budget to the sheriff" is contrary to state law. Defendant accurately states that the section relied on by Judge Coar in his opinion applies only to counties of more than 1,000,000 and as of the 1990 census by the United States Census Bureau DuPage County had a total population count of 781,666. Thus, that section does not apply to the sheriff in this case. However, our decision is not based on the *Hernandez* case alone, but upon an analysis of all applicable law, including *McMillian*, the Illinois constitution, the rulings of the Illinois Supreme Court, the rulings of the federal courts, geographically encompassing Illinois, and Illinois law. Thus, one error in one of those many sources is unlikely to have an effect on our opinion.

Defendant also argues that Judge Coar's opinion should be disregarded because it in-

correctly asserts that in *McDonald v. County Board of Kendall County* the Illinois Appellate Court ruled that the county boards have the power to diminish the law enforcement powers of the sheriff. Not surprisingly, defendant does not provide a cite to this portion of *Hernandez* because Judge Coar's opinion makes no such assertion. Rather, *Hernandez* accurately cited *McDonald* for the proposition that in Illinois "investigatory responsibilities are the exclusive domain of no one county officer." *Hernandez*, 1997 WL 598132 at *8, *quoting McDonald*, 100 Ill.Dec. 531, 497 N.E.2d at 512. In response to defendant's argument, we do point out that in fact the county board has the right to alter any duties, powers and functions of all county officers (including sheriffs) that are not specifically imposed by law. 5 ILCS 5/5–1087.

Finally, defendant argues that all of the *McMillian* factors are present in Illinois and points out several provisions of the Illinois code indicating that the state, and not the county, ultimately controls the sheriffs in their law enforcement capacities. Certainly some of the *McMillian* factors are present in Illinois' system. However, Illinois differs from the Alabama system in several important respects. The structure and composition of the Illinois constitutional provisions regarding sheriffs, for example, are very different from those in the Alabama constitution which specifies that sheriffs are to be a part of the state executive department. In addition, in *Moy*, the Illinois Supreme Court confirmed the widely accepted belief that sheriffs were county officers, while in Alabama its supreme court had reached the opposite conclusion. Many more differences between this case and *McMillian* have been discussed previously in this opinion. Contrary to what defendant repeatedly asserts, however, the relevant inquiry is not who "controls" the office of the sheriff but, rather, whether the sheriff is a state officer who can claim the protection of the Eleventh Amendment. We find that the sheriff is independent of the state. Consequently, he cannot avail himself of the Eleventh Amendment immunity.

the sovereign power of the State" and who hold positions the "duties [of which] are continuous, without regard to the particular person who

holds the office." This definition reinforces our view of sheriffs as policymakers in the area of law enforcement and criminal detention.

## CONCLUSION

For the reasons stated herein, defendant's motion to dismiss is denied.