**Renaldo JOHNSON, Plaintiff–Appellant,**

v.

**Carrie SONDALLE and Matthew J. Frank, Defendants–Appellees.**

No. 04–1052.

United States Court of Appeals, Seventh Circuit.

Submitted Sept. 28, 2004.*

Decided Oct. 1, 2004.

* After an examination of the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* Fed. R.App. P. 34(a)(2).

Renaldo Johnson, Milwaukee, WI, pro se.

Mary D. Batt, Madison, WI, for Defendants–Appellees.

Before POSNER, ROVNER, and WILLIAMS, Circuit Judges.

## ORDER

Renaldo Johnson brought suit under 42 U.S.C. § 1983 alleging that the Secretary of the Wisconsin Department of Corrections and the DOC employee who was supervising his probation kept him jailed unlawfully on a motion to revoke his probation even though the motion had been resolved by his consent to enter inpatient drug treatment as an alternative to revocation. The district court granted the defendants' motion to dismiss. We affirm, but for different reasons.

Except as noted, we recite the facts as Johnson tells them in his complaint and its attachments. Johnson was on probation in lieu of a "two year stayed sentence" for misdemeanor retail theft when DOC employee Carrie Sondalle, the probation and parole agent responsible for his supervision, took him into custody on March 12, 2003, to answer a motion to revoke his probation. Johnson was placed in the Milwaukee County Jail on a probation hold. Five days later, on March 17, another, unidentified DOC employee sent by Sondalle visited Johnson in jail and presented him with a form Alternative to Revocation Agreement (ATR) that, according to Johnson, offered him the option of avoiding revocation by consenting to 90 days of inpatient drug treatment at the Thurgood Marshall House in Milwaukee. Johnson immediately accepted the proposal and signed the agreement, but he was not taken to the treatment facility or released from jail. On or about March 23 he wrote to Sondalle and her supervisor, David Clark, insisting that DOC rules prohibited them from continuing to hold him in custody in light of the ATR agreement. Clark sent a response on April 3, explaining on behalf of himself and Sondalle that the ATR involved "being in custody while waiting for a placement" at the treatment center. Clark added that, if the ATR was not

"agreeable" to Johnson, the DOC could withdraw it "and proceed to a revocation hearing." Johnson replied with an April 9 letter to the DOC regional chief complaining about Sondalle and proposing that "in lieu of the A.T.R." he be released on electronic monitoring pending his placement in the treatment facility. He filed another complaint with Matthew Frank, the Secretary of the DOC, on May 1. Those complaints drew no response. On May 1 he petitioned in state court for a writ of habeas corpus, but that action was dismissed as moot after he was released from jail on May 6.

Exactly what happened to Johnson after that date is not disclosed by the materials before us. On May 30, 2003, just 25 days after his release from jail, he filed his form § 1983 complaint giving an address in Franklin, Wisconsin, as his "present place of confinement." As the district court construed his damages claims at initial screening, see 28 U.S.C. § 1915A(a), Johnson asserts that Sondalle violated his due process rights by holding him in jail for roughly eight weeks after the ATR agreement mooted the motion to revoke that had landed him there, and that Frank maintained an "illegal policy" of sanctioning continued incarceration of probationers waiting placement in other facilities pursuant to an ATR. On August 11 the defendants moved to dismiss, arguing that *Heck v. Humphrey*, 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994), barred the suit, that they enjoyed absolute or at least qualified immunity, and that, regardless, Johnson had no liberty interest in remaining out of jail while awaiting his ATR placement. Johnson opposed the motion two weeks later, and by that time he was in a state prison. He was still in prison when the district court granted the defendants' motion to dismiss, and as far as we can tell the ATR was never carried out and Johnson was never placed in drug treatment.

In granting the defendants' motion to dismiss, the district court held that Johnson's suit was barred under *Heck*, and that, in any event, both defendants would enjoy some form of immunity, absolute in the case of Sondalle and qualified for Frank. The defendants continue to press both contentions, but we are not wholly satisfied with either. As to *Heck* the district court reasoned that Johnson was not trying to use § 1983 to bypass habeas corpus because his release from confinement on May 6 mooted any such remedy, but still the court thought that *Heck* was an obstacle because, in the court's view, a conviction or sentence or other basis for custody that has not been overturned cannot give rise to a civil rights claim even if a plaintiff's release means that the reason for the custody is no longer subject to legal challenge. Both premises are problematic, the latter because the Supreme Court held after the district court ruled that *Heck* is not "implicated by a prisoner's challenge that threatens no consequence for his conviction or the duration of sentence," *Muhammad v. Close*, 540 U.S. 749, 124 S.Ct. 1303, 1304, 158 L.Ed.2d 32 (2004); *see also DeWalt v. Carter*, 224 F.3d 607, 616–18 (7th Cir.2000), and the former because we doubt as a matter of fact that Johnson no longer had a habeas corpus remedy when he filed suit on May 30. By that date Johnson was in a state prison, and if he was there because the DOC had gone ahead with the revocation of his probation, as seems likely, then he could have sought credit against his revocation sentence for the prehearing custody both from the DOC and the state courts. Wis. Stat. § 304.072(5) (providing that "sentence of a revoked probationer shall be credited with the period of custody ... pending revocation"); *id.* § 973.155(1), (2), (5), (6) (providing for prehearing credit for revoked probationer and establishing process to seek

credit first from DOC and then state courts). But we cannot speculate about what events landed Johnson in prison, and since *Heck* is an affirmative defense and the defendants never offered an explanation, *see Okoro v. Bohman,* 164 F.3d 1059, 1061 (7th Cir.1999), we do not see how it applies.

As to immunity, the district court concluded that Sondalle, the subordinate, was absolutely immune for electing to detain Johnson until space opened at the treatment center but that Frank, the head of the DOC and Sondalle's boss, enjoyed only qualified immunity for creating the policy that, according to Johnson, was the very reason Sondalle elected to detain him. This approach seems to cut against the usual view that where defendants have similar roles "their claims of absolute immunity will either stand or fall as a group." *Thompson v. Duke,* 882 F.2d 1180, 1183 n. 3 (7th Cir.1989). Moreover, while Sondalle insists that our decisions have extended absolute immunity in the revocation context to individuals whose "activities … are part and parcel of the decision process," the cases she cites cannot be read so broadly. *See Walrath v. United States,* 35 F.3d 277, 282 (7th Cir.1994) (Parole Commission member with adjudicatory authority entitled to absolute immunity in connection with exercise of discretion in issuing arrest warrant after reviewing evidence of violation); *Thompson,* 882 F.2d at 1181 (holding that officials involved in scheduling and conducting parole revocation proceeding enjoyed absolute immunity). Indeed, to the contrary, we held in *Wilson v. Kelkhoff,* 86 F.3d 1438, 1445–46 (7th Cir. 1996), that a prison employee's work in investigating violations of mandatory supervised release and initiating revocation proceedings was not "functionally comparable to the types of conduct accorded absolute immunity." *See also Knox v. Smith,* 342 F.3d 651, 657–59 (7th Cir.2003)

(analyzing parole officer's possible liability for involvement in arrests of parolee under qualified immunity standard). It may be, then, that qualified immunity would provide a more useful analysis as to both defendants.

But we need not explore these questions further because our review of the Wisconsin statutes and regulations governing probation—in particular those relating to ATR—convinces us that Johnson has no conceivable claim for relief. In Wisconsin a sentence to probation places the defendant in the custody of the DOC, Wis. Stat. § 973.10(1), and thus even when the sentencing court has not imposed a period of incarceration as a condition, *see id.* § 973.09(4)(a), a sentence to probation "shall subject the defendant to the control of the department under conditions set by the court and rules and regulations established by the department for the supervision of probationers," *id.* § 973.10(1). Revocation matters accordingly are within the province of the DOC to initiate, and if contested are adjudicated by the Division of Hearings and Appeals within the Wisconsin Department of Administration. *Id.* § 973.10(2). The DOC may incarcerate a probationer for up to five business days while considering whether to commence revocation proceedings, Wis. Admin. Code DOC § 328.22(2)(b), and, if the violation has been admitted in writing (as it was in the ATR Johnson signed), continue to detain the probationer on its own initiative pending a final revocation hearing, *id.* §§ 328.22(4), 331.04(1), (2)(b), (5). It is this final provision that dooms Johnson's complaint.

DOC regulations require that ATR be considered whenever revocation is contemplated, *see* Wis. DOC Div. of Cmty. Corr. Operations Manual § 10.01.06 (2003), and Johnson's premise is that the motion to revoke underlying his detention was ren-

dered a nullity the minute he inked the ATR agreement on March 17. But Johnson simply misunderstands the process. If a proposed ATR program is "not available," the DOC will proceed with a request to the Division of Hearings and Appeals for a final revocation hearing, and if the ATR program does not become available by the time of the hearing, the DOC must decide whether to seek a postponement or abandon the proposed ATR agreement and proceed with the revocation. *Id.* Only if the ATR program becomes available should the final revocation hearing be cancelled and the motion to revoke be withdrawn, and the regulation makes explicit that "[n]o hearing should be cancelled before the offender enters the appropriate ATR program." *Id.*

Johnson, of course never entered the proposed ATR program. He conceded in the district court that the Thurgood Marshall House was booked when he executed the ATR agreement on March 17 (the facility apparently can house just 26 inpatient clients), so at that time his desired ATR was "not available." Johnson and Sondalle had a nascent agreement, but not one that would allow Sondalle to withdraw her motion to revoke. She was required to proceed with a request for a final revocation hearing, *id.,* which, according to Johnson, she did by submitting a request to the Division of Hearings and Appeals on March 26. And since the final revocation hearing had not commenced within 50 days of the onset of Johnson's detention, he, not surprisingly, was released from custody pending further proceedings, *see* Wis. Stat. § 302.335(2)(b) (providing that Division of Hearings and Appeals ordinarily "shall begin a final revocation hearing within 50 calendar days after the person is detained"); *State ex rel. Jones v. Div. Adm'r, Wis. Div. of Hearings & Appeals,* 195 Wis.2d 669, 536 N.W.2d 213, 214 (1995) (holding that 50-day limit is "directory, not

mandatory," and that remedy for exceeding 50-day limit is release pending final hearing date, not dismissal of motion to revoke). As we have said, the record leaves us guessing as to what happened after May 6, but at least up to that date the DOC had acted consistently with the governing statutes and its own regulations. Accordingly, the judgment is AFFIRMED.